763 A.2d 359

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**David Allen SATTAZAHN, Appellant.**

Supreme Court of Pennsylvania.

Argued May 1, 2000.

Decided Nov. 27, 2000.

538

John T. Adams, Reading, for David Allen Sattazahn.

Robert Brett Dunham, Philadelphia, for Amicus–Sattazahn.

Mark C. Baldwin, Robert A. Graci, Harrisburg, Iva C. Dougherty, Reading, for Com.

BEFORE: FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

NEWMAN, Justice.

On January 22, 1999, a jury convicted Appellant David Allen Sattazahn (Sattazahn) of first-degree murder in the slaying of Richard Boyer (Boyer) and sentenced him to death. This is a direct appeal of this verdict. As explained below, this was a second trial for Sattazahn regarding the murder of Boyer. The initial trial resulted in a conviction for first-degree murder and the imposition of a life sentence, which the Superior Court reversed on appeal, ordering a new trial. For the reasons that follow, we affirm both the verdict of guilt, and the sentence of death on retrial.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On Sunday evening, April 12, 1987, Sattazahn and his accomplice, Jeffrey Hammer (Hammer) hid in a cleared wooded area waiting to rob Boyer, who was the manager of the Heidelberg Family Restaurant. They had watched Boyer for several weekends and determined that Sunday would be the busiest day in the restaurant. At closing, Sattazahn and

Hammer confronted Boyer in the parking lot. Hammer carried a .41 caliber revolver and Sattazahn had a .22 caliber Ruger semiautomatic pistol. With these guns drawn, the pair attempted to rob Boyer of the bank deposit bag with the day's receipts, but Boyer threw the bag toward the restaurant and then again toward the roof of the restaurant. While Sattazahn told Boyer to get the bag, Boyer did not comply and began to run away. Both Sattazahn and Hammer fired shots and Boyer fell to the ground. The two men then grabbed the bank deposit bag and fled.

Following a lengthy trial, a jury on May 10, 1991 convicted Sattazahn of first, second and third-degree murder, two counts of aggravated assault, possession of an instrument of crime, carrying a firearm without a license, and criminal conspiracy. In the penalty phase, the Commonwealth presented one aggravating circumstance (commission of the killing while in the perpetration of a felony). Sattazahn presented as mitigating circumstances his lack of a significant history of prior criminal convictions and his age at the time of the crime. The jury deliberated without reaching a decision on death or life and without making any findings regarding aggravating or mitigating factors. After three and one-half hours, the judge dismissed the jury as hung, and entered a mandatory life sentence. On appeal, based on a jury instruction, the Superior Court reversed and remanded for a new trial on the remaining charges .[1]

To prepare for a retrial, on March 9, 1995, the Commonwealth filed a notice of intent to seek the death penalty, setting forth the aggravating circumstance presented at the first trial—commission of the killing while in the perpetration of a felony—and adding the circumstance that the defendant had a significant history of felony convictions involving the use

[1]. The Commonwealth filed a petition for allowance of appeal as to the jury instruction. Sattazahn filed a cross-petition for allowance of appeal on other issues. On April 15, 1994, this Court granted the Commonwealth's allocatur petition and denied Sattazahn's cross-petition. However, on December 24, 1994, this Court dismissed the appeal as improvidently granted.

or threat of violence to the person.[2] On March 13, 1995, Sattazahn's attorney filed a motion to prevent the Commonwealth from seeking the death penalty and from adding an additional aggravating factor in his retrial, which the trial court denied and the Superior Court affirmed. We denied allocatur and the second trial ensued, resulting in a conviction and the imposition of the death penalty.

## II. DISCUSSION

### A. Sufficiency of the Evidence

Because this is a direct appeal death penalty case, we conduct an independent review of the sufficiency of the evidence supporting the jury's verdict of guilt on the charge of first-degree murder. *Commonwealth v. Clark*, 551 Pa. 258, 710 A.2d 31, 34 (1998), *cert. denied*, 526 U.S. 1070, 119 S.Ct. 1465, 143 L.Ed.2d 550 (1999) (citations omitted). The analysis we use to determine if the evidence was sufficient to sustain the conviction for first-degree murder is, whether after viewing all the evidence in the light most favorable to the Commonwealth, as verdict winner, the evidence is sufficient to enable the trier of fact to find every element of the crime of first-degree murder beyond a reasonable doubt. *Id.* To find a defendant guilty of first-degree murder a jury must find that the Commonwealth has proven that he or she unlawfully killed a human being and did so in an intentional, deliberate and premeditated manner. It is the element of a willful, premeditated and deliberate intent to kill that distinguishes first-

**2.** On September 19, 1991, in Berks County, Sattazahn entered guilty pleas on five different burglaries and one robbery. On February 14, 1992, the court sentenced Sattazahn for the burglaries and robbery, as well as sentencing him to life in prison for first-degree murder. He was also ordered to serve consecutive sentences on the remaining convictions from trial that had not merged. Sattazahn filed a timely appeal to the Superior Court. Shortly thereafter, on March 17, 1992, Sattazahn entered a guilty plea to third degree murder in Schuylkill County for a murder he committed on December 26, 1987. On April 1, 1992, Sattazahn entered a guilty plea for burglary charges in Lebanon County. On appeal, the Superior Court found there was insufficient evidence to support a conviction on the conspiracies to commit third degree murder and aggravated assault, thereby arresting judgment and dismissing those charges.

degree murder from all other criminal homicide. *Id.* Specific intent to kill may be inferred from the defendant's use of a deadly weapon upon a vital party of the victim's body. *Id.*

With this standard in mind, we have reviewed the evidence and have found it sufficient to support the jury's verdict. At trial, the Commonwealth presented the testimony of Hammer, who testified as to the details of the crime as recited in the fact portion above. Hammer's testimony was confirmed by an autopsy that revealed that Boyer suffered two gunshot wounds in the lower back and one each in the left shoulder, the lower face and the back of the head. All wounds were consistent with being caused by a .22 caliber bullet, the caliber gun that Hammer attributed to Sattazahn, and which a gun shop owner testified that Sattazahn purchased. Moreover, the .22 and the two slugs recovered from Boyer's body, and the five cartridges found at the scene, were identified as being fired from Sattazahn's gun.

A review of the Record indicates that the facts were more than sufficient to support the conviction. We now turn to the specific issues that Sattazahn has raised.

## B. *Cross-examination of Hammer*

Sattazahn raises two alleged errors based on the trial court's limitation upon the cross-examination of Hammer: (1) regarding Hammer's guilty plea, and (2) preclusion of police reports regarding Hammer, which contained allegedly inconsistent statements.

We discuss first whether Sattazahn is entitled to a new trial because the trial court did not allow defense counsel to cross-examine Sattazahn's cohort in the murder, Jeffrey Hammer, regarding the details of his guilty plea for the third-degree murder of Boyer. Sattazahn argues, *citing Commonwealth v. Birch*, 532 Pa. 563, 616 A.2d 977 (1992) and *Commonwealth v. Johnson*, 536 Pa. 153, 638 A.2d 940 (1994), that counsel should have been able to cross-examine the witness broadly to determine his bias to testify that he did not murder Richard Boyer.

As a general rule, evidence of interest or bias on the part of a witness is admissible and constitutes a proper subject for cross-examination. It is particularly important that, where the determination of a defendant's guilt or innocence is dependent upon the credibility of a prosecution witness, an adequate opportunity be afforded to demonstrate through cross-examination that the witness is biased.

*Commonwealth v. Birch*, 532 Pa. 563, 616 A.2d 977, 979 (1992). Further, if the Commonwealth's witness might be biased because of treatment received in relation to a plea agreement we have stated that:

whenever a prosecution witness may be biased in favor of the prosecution because of outstanding criminal charges or because of any non-final criminal disposition against him within the same jurisdiction, that possible bias, in fairness, must be made known to the jury. Even if the prosecutor has made no promises, either on the present case or on other pending criminal matters, *the witness may hope for favorable treatment from the prosecutor if the witness presently testifies in a way that is helpful to the prosecution. And if that possibility exists, the jury should know about it.* The jury may choose to believe the witness even after it learns of actual promises made or possible promises of leniency which may be made in the future, but the defendant, under the right guaranteed in the Pennsylvania Constitution to confront witnesses against him, must have the opportunity at least to raise a doubt in the mind of the jury as to whether the prosecution witness is biased. It is not for the court to determine whether the cross-examination for bias would affect the jury's determination of the case.

*Commonwealth v. Hill*, 523 Pa. 270, 566 A.2d 252 (1989), *reargument denied*, 525 Pa. 505, 582 A.2d 857 (1990), *citing*, *Commonwealth v. Evans*, 511 Pa. 214, 512 A.2d 626–27 (1986)(emphasis added).

■ We have thoroughly reviewed the record and find no instance where defense counsel was prevented from presenting the bias of Hammer. While the trial court sustained several objections related to defense counsel's cross-examina-

tion of Hammer when counsel asked Hammer to read a count of the murder charge against him, (N.T. at 347) this ruling did not hinder Sattazahn's ability to show that Hammer was biased. Through counsel's cross-examination of Hammer, the jury heard that Hammer was allowed to plead to third-degree murder in exchange for his testimony against Sattazahn, even though the Commonwealth was at the time seeking the death penalty against Hammer for the murder of Boyer. (N.T. at 331). Thus, Hammer was able to avoid the imposition of the death penalty for his part in the murder because he had agreed to testify against Sattazahn. Additionally, due to Hammer's checkered criminal past for felony burglary, he faced potential jail time of 240 years, but because of the guilty plea and testimony against Sattazahn, he could be paroled for all of his crimes in nineteen years. (N.T. at 228–333). The jury heard more than sufficient evidence to raise bias and we therefore reject Sattazahn's claim that he is entitled to a new trial on this issue.

We now address Sattazahn's contention that the trial court erred in not allowing counsel to cross-examine Hammer regarding statements given to members of the State Police, which would indicate that Hammer lied to them. We reject Sattazahn's argument because again the record does not support his claim. While the trial court did sustain an objection to showing the witness one police report, ultimately defense counsel was successful in showing Hammer another police report after which Hammer testified that he had lied to police. (N.T. at 337–338, 341). Therefore, we agree with the Commonwealth that at best, the impeachment of Hammer with the police report about which he now complains would have been cumulative evidence. Moreover, any error did not prejudice Sattazahn given that the jury heard ample evidence that Hammer lied to police regarding his involvement with several burglaries. Accordingly, Sattazahn is not entitled to a new trial on this issue.

### C. *Jury Charge*

Sattazahn next contends that the trial court erred in its charge regarding "inconsistent statements" given by

Hammer and another witness, Franz Wanner. Sattazahn, without any legal authority, argues that the instruction of the court took away from the jury its fact-finding ability. We do not agree. A jury charge by the trial court should be evaluated based on the entire charge and not on discrete portions. *Commonwealth v. Saranchak,* 544 Pa. 158, 675 A.2d 268, 276 (1996), *cert. denied,* 519 U.S. 1061, 117 S.Ct. 695, 136 L.Ed.2d 617 (1997). The only inquiry is whether the instruction adequately, clearly and accurately presents the issue to the jury. *Id.*

■■■ The standard jury instruction regarding prior inconsistent statements states the following:

You have heard evidence that a witness, _____, made a statement on an earlier occasion that was inconsistent with his present testimony. You may consider this evidence for one purpose only, to help you judge the credibility and weight of the testimony given by the witness at this trial. You may not regard the evidence of an earlier inconsistent statement as proof of the truth of anything said in the statement.

Pa.SSJI Crim. 4.08A. The instruction that the trial court gave was essentially identical except that the court stated that each witness "made a statement on an earlier occasion that *may be* inconsistent with his present testimony" and then continued to give the standard instruction verbatim. (N.T. at 519)(Emphasis added). We fail to see how this instruction took away any fact-finding function of the jury and instead we believe that the charge as a whole adequately, clearly and accurately presented the issue to the jury, particularly where it is not entirely clear that either witness made a truly inconsistent statement. Thus, Sattazahn is not entitled to a new trial.

### D. *Introduction of Evidence in Penalty Phase*

■■■ By permitting the Commonwealth to introduce evidence during the penalty phase of the trial regarding the nature of prior offenses and alleged facts surrounding the defendant's prior convictions, Sattazahn claims the trial court

erred. We disagree. From the time this Court decided *Commonwealth v. Beasley*, 505 Pa. 279, 479 A.2d 460 (1984), we have consistently held that, in the penalty phase of the trial, the prosecution is permitted to examine the facts surrounding a defendant's previous felony convictions so that a jury may assess whether these prior crimes involved violence sufficient to support the aggravating circumstance in 42 Pa. C.S.A. § 9711(d)(9). *See also Commonwealth v. Reid*, 533 Pa. 508, 626 A.2d 118 (1993). Accordingly, the trial court did not err in allowing the Commonwealth to present the facts behind Sattazahn's prior guilty pleas for third degree murder and burglary.

Moreover, while Sattazahn baldly contends that Trooper Johnson's testimony was inadmissible and prejudicial hearsay regarding the details of his past crimes, he does not point to any specific instances, nor does he articulate how any of the troopers' statements prejudiced him. Our review of the record does not support his claims and instead, the properly admitted evidence amply supports the aggravating factor that Sattazahn had a history of committing violent felonies, including murder and burglary. *Cf., Commonwealth v. Young*, 536 Pa. 57, 637 A.2d 1313, 1319 n. 9 (1993), *cert. denied*, 511 U.S. 1012, 114 S.Ct. 1389, 128 L.Ed.2d 63 (1994)(testimony of officer properly admitted to establish details of crime to support aggravating factor of violent felonies.)

### E. *Constitutionality of Death Penalty on Retrial*

Sattazahn next challenges the constitutionality of allowing the Commonwealth to seek the death penalty on retrial where he received a life sentence in his initial trial. He argues that the Pennsylvania Constitution prohibits imposition of the death penalty because it guarantees a right to an appeal, equal protection and protection from double jeopardy and that *Commonwealth v. Martorano*, 535 Pa. 178, 634 A.2d 1063 (1993) was wrongly decided on federal constitutional principles.

We address first the argument that in *Martorano* we wrongly interpreted federal constitutional principles pursuant

to *Bullington v. Missouri,* 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981) and *Arizona v. Rumsey,* 467 U.S. 203, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984). As we set forth in *Martorano,* the United States Supreme Court has consistently reaffirmed the basic principle that the constitutional guarantee against double jeopardy imposes no limitations upon the power to retry a defendant who has succeeded in getting his first conviction set aside. 634 A.2d at 1068–69. Since the original conviction is nullified at a defendant's behest, the "slate was wiped clean," and the sentencing court can impose any legally authorized sentence, whether or not it is greater than the sentence imposed following the first trial. *Martorano,* 634 A.2d at 1068, *citing North Carolina v. Pearce,* 395 U.S. 711, 720–21 (1969). An exception to this rule exists where the sentencing proceeding resembles a trial. *See, Bullington; Rumsey.*

In *Bullington,* a defendant was tried for capital murder and at the guilt phase of trial, the jury returned a verdict of guilty. As required by statute, the trial court then conducted a sentencing hearing before the same jury that had found the defendant guilty. The parties were afforded the opportunity to present additional evidence in aggravation or mitigation of punishment. After argument, instructions from the judge and deliberation, the jury returned a unanimous verdict of life imprisonment. When Bullington was granted a new trial on appeal, the state notified him of its intention to seek again the death penalty. Because the first sentencing jury, by choosing life, impliedly decided that the prosecution had not proved its case for death, the result was that the jury "acquitted" the defendant of the death penalty. This "acquittal on the merits" precludes the State from seeking the death penalty upon retrial. 451 U.S. at 434–35, 101 S.Ct. 1852.

In *Rumsey,* the Court applied *Bullington* to preclude the state from seeking the death penalty upon retrial after the trial judge "acquitted" the defendant of the death penalty at the sentencing hearing. Justice O'Connor wrote:

The double jeopardy principle relevant to respondent's case is the same as that invoked in *Bullington:* an acquittal on

the merits by the sole decisionmaker in the proceeding is final and bars retrial on the same charge. Application of the *Bullington* principle renders respondent's death sentence a violation of the Double Jeopardy Clause because respondent's initial sentence of life imprisonment was undoubtedly an acquittal on the merits of the central issue in the proceeding—whether death was the appropriate punishment for respondent's offense. The trial court entered findings denying the existence of each of the seven statutory aggravating circumstances, and as required by state law, the court then entered judgment in respondent's favor on the issue of death. That judgment, based on findings sufficient to establish legal entitlement to the life sentence, amounts to an acquittal on the merits and, as such, bars any retrial of the appropriateness of the death penalty.

104 S.Ct. at 2310.

In *Martorano,* we applied *Bullington* and *Rumsey* and held that the Commonwealth is not precluded from seeking the death penalty on retrial, where, following their first trial, defendants were convicted of first-degree murder and sentenced to life imprisonment, not by a unanimous jury verdict, but by the trial judge following the jury's deadlock regarding the penalty. The hung jury did not act as an acquittal on the merits as did the proceedings at issue in *Bullington* and *Rumsey.*

Sattazahn argues that *Martorano* was wrongly decided because it is irrelevant whether the life sentence is a result of a unanimous jury verdict or operation of law following jury deadlock because either situation is an acquittal on the merits. This is the exact issue raised by the Appellant in *Martorano* and after a thorough discussion of *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *Bullington v. Missouri,* 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981); *Arizona v. Rumsey,* 467 U.S. 203, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984) and *Poland v. Arizona,* 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986) we rejected it stating that:

What respondents fail to apprehend is the significance of the absence of decision in the instant case. Here, unlike the sentencer in *Bullington* or the other cases just discussed, the jury did not make a decision on the merits regarding an appropriate penalty. It did not find that the state had failed to prove its case. It made no findings about the existence of any aggravating or mitigating circumstances. It was deadlocked. Since it made no decision, there could not in fact be any "acquittal on the merits." Nor did the imposition of a life sentence by the trial judge operate as an acquittal. Under Pennsylvania's sentencing scheme, the judge has no discretion to fashion sentence once he finds that the jury is deadlocked. The statute directs him to enter a life sentence. 42 Pa.C.S. § 9711(c)(1)(v) ( ... if ... further deliberation will not result in a unanimous agreement as to the sentence, ... the court shall sentence the defendant to life imprisonment.) (emphasis added). The judge makes no findings and resolves no factual matter. Since judgment is not based on findings which resolve some factual matter, it is not sufficient to establish legal entitlement to a life sentence. A default judgment does not trigger a double jeopardy bar to the death penalty upon retrial.

634 A.2d at 1070. In addition, in *Martorano* we rejected the argument that, because the death penalty statute makes no distinction between a unanimous jury verdict of life imprisonment and a jury's deadlock, a hung jury equals an acquittal on the merits. In rejecting this argument, we stated that:

While at first blush this interpretation may seem appealing, it loses its force when both subsections are read together and in their entirety. Subsection (iv) specifies the possible jury verdicts which may be entered upon conviction for first-degree murder. Subsection (v) details the sentencing procedure to be followed in the absence of a jury verdict, i.e. when "further deliberation will not result in a unanimous agreement as to the sentence". Contrary to respondents' contentions, the last sentence of subsection (iv) states nothing more than that the verdict is life imprisonment when the

jury unanimously agrees that the sentence should be life because there was neither (1) one aggravating and no mitigating circumstance, nor (2) aggravating circumstances sufficient to outweigh the mitigating circumstances. In the absence of a unanimous verdict, subsection (v) provides for the discharge of the jury and imposition of a life sentence by the court.

If the jury's failure to reach a unanimous agreement as to sentence could function as a verdict, subsection (v) would be superfluous. When there is a verdict, the court does not discharge the jury. Instead, it receives and records the verdict, and imposes the sentence fixed by the jury.

Since there was no jury unanimity as to sentence during respondents' first trial, there could be no jury verdict. Accordingly, there was no acquittal on the merits of the death penalty. Nothing in Pennsylvania's sentencing statute precludes imposition of the death penalty upon reconviction, so long as the sentencer finds that the evidence is sufficient to warrant it.

634 A.2d at 1072. Sattazahn offers no compelling reason for us to reverse *Martorano* today, and we decline to do so.

■ We now turn to Sattazahn's argument that Pennsylvania's constitutional provisions regarding double jeopardy, right of appeal, due process and equal protection bar the Commonwealth from seeking the death penalty on retrial. We must reject this claim as we have held otherwise in *Martorano,* where this Court held that Pennsylvania's constitutional analysis of these issues is the same as the federal approach. We stand by that decision. Accordingly, the Pennsylvania Constitution does not prohibit the Commonwealth from seeking the death penalty on retrial where a life sentence is imposed in the first trial.

■ Sattazahn argues that *Martorano* is flawed because it failed to consider a defendant's Pennsylvania constitutional right of appeal pursuant to Article V, which has no counterpart in the federal constitution and that this Article, in combination with Pennsylvania's double jeopardy, due process and

equal protection provisions, affords greater rights. Most of this argument is in reality a rehashing of the arguments that we soundly rejected in *Martorano* except that Sattazahn puts a new gloss on the argument, claiming that to allow the Commonwealth to seek the death penalty on retrial acts as a de facto denial of the right to appeal. His argument is that any rational defendant who receives a life sentence imposed by a judge after a hung jury during the penalty phase will forego his or her appeal for fear of being executed should he or she win on appeal but lose upon retrial. In other words, it has a chilling effect on any defendant exercising his or her constitutional rights. Sattazahn points to other states having a state constitutional right to appeal such as Louisiana, New Jersey, Utah, Alaska, California and West Virginia. He argues that Pennsylvania should embrace the policy considerations set forth in the case law of these states.

We reject Sattazahn's invitation to expand the interpretation of our Constitution and reaffirm our holding in *Martorano* that "the federal approach to this issue is a sound one. It accords respondents the right to a fair trial, while preserving society's interest in imposing the appropriate punishment on one who has been convicted after obtaining such a trial." 634 A.2d at 1071. Moreover, we do not believe that a defendant's right to appeal is "chilled." In *Chaffin v. Stynchcombe*, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973), which we relied upon in *Martorano* to reject the Appellant's federal Fourteenth Amendment arguments, the Supreme Court aptly stated that the Constitution does not forbid:

> every government-imposed choice in the criminal process that has the effect of discouraging the exercise of constitutional rights.

\* \* \*

> *the choice occasioned by the possibility of a harsher sentence ... does not place an impermissible burden on the right of a criminal defendant to appeal ... his conviction.*

*Chaffin v. Stynchcombe,* 412 U.S. at 30, 35, 93 S.Ct. 1977 (emphasis added).

Sattazahn ignores the fact that in *Chaffin* the United States Supreme Court has rejected the claim that a harsher sentence on retrial has a chilling effect on the defendant's right to appeal or collaterally attack his conviction. We believe that this analysis applies equally to Sattazahn's arguments pursuant to the Pennsylvania Constitution and thus, stand by our determination in *Martorano* that there is no distinction between the state and federal approaches with regard to whether the prosecution can seek a harsher sentence at retrial.

### F. *Addition of Aggravating Factor*

Last, Sattazahn argues that the Commonwealth should not have been allowed to add an additional aggravating factor because there is no statutory authority for the addition of aggravating factors upon retrial when the original sentence was life imprisonment. We disagree. As we stated in *Martorano,* an order for a new trial wipes the slate clean. The criminal history of Sattazahn changed since the original trial in May of 1991. At the time of the retrial, he had a significant history of felony convictions that involve the threat of violence to the person. The fact that the offenses occurred after the instant murder is irrelevant under the law. *E.g., Commonwealth v. Williams,* 541 Pa. 85, 660 A.2d 1316, 1323 (1995) (jury may consider all of defendant's existing convictions, including crimes committed after the crime at issue). Thus, the trial court did not err.

### III. *CONCLUSION*

Finding no error, we affirm both the verdict of guilt and the sentence of death on retrial. The Prothonotary is hereby directed to transmit to the Governor's Office the complete records of the trial, sentencing hearing, imposition of sentence and review by the Supreme Court of Pennsylvania pursuant to 42 Pa.C.S. § 9711(i).

Justice SAYLOR files a dissenting opinion in which Chief Justice FLAHERTY and Justice NIGRO join.

SAYLOR, Justice, dissenting.

As the majority observes, precedent at both the federal and state levels would allow a capital defendant who has been sentenced to life imprisonment as the result of a deadlocked jury to be exposed to the death penalty upon retrial. Nevertheless, I am troubled by the chilling effect that such a rule places upon the right of appeal guaranteed by our state Constitution. In my view, the ends of justice would be better served if, in our supervisory role respecting the administration of capital cases in Pennsylvania, we were to require that such a defendant, if convicted upon retrial, must receive the life sentence originally imposed. Such a requirement would be consistent with the legislative intent that if even a single juror decides against the death penalty, the penalty will not be imposed. Accordingly, I respectfully dissent.

Chief Justice FLAHERTY and Justice NIGRO join this dissenting opinion.