J-S21014-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ALEXANDER GARNETT, | |
| Appellant | No. 572 EDA 2015 |

Appeal from the Judgment of Sentence Entered January 30, 2015
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0017981-2013

BEFORE:  BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED MAY 10, 2016**

Appellant, Alexander Garnett, appeals from the judgment of sentence of life imprisonment without the possibility of parole, and a consecutive term of five to ten years' incarceration, imposed after a jury convicted him of first-degree murder and possession of a firearm by a person prohibited.  We affirm.

The trial court summarized the facts and procedural history of Appellant's case, as follows:

**Factual Basis**

This case stems from the execution of Jasmarr Anderson, a young man just shy of his twenty-first birthday, by [A]ppellant, … which was vividly caught on the video system of the Benjamin Banneker Apartments in the City of Chester on July 20, 2013. As

---

[*] Former Justice specially assigned to the Superior Court.

the evidence solidly and unequivocally demonstrated, Appellant showed a cruel and callous disregard for life by pretending to be in league with Anderson when, in actuality, he was setting up his assassination.

In the video, Appellant, David Colon[,][5][] and Jasmarr Anderson are seen walking from the front of Benjamin Banneker Apartments and then turning onto West Seventh Street. Appellant is on the outside closest to the curb line of West Seventh Street, Colon is in the middle and Anderson is nearest the apartments. Appellant slyly drops back a few steps, circles behind Colon and gets directly behind Anderson. Appellant's arm goes up, and Anderson falls to the ground. Appellant and Colon are then seen running from the area.

[5] David Colon was subsequently murdered after Jasmarr Anderson's death and prior to Appellant['s] being arrested on August 28, 2013.

On the evening of July 20, 2013, at approximately 11:45 p.m., Officer Melissa Goodman of the Chester City Police Department was on patrol in a marked police vehicle. While on patrol, Officer Goodman responded to 2101 West Seventh Street after receiving a call for shots fired at the Benjamin Banneker Apartments. Upon arrival, a male on scene relayed to her that a dead body was on the east side of the building. Officer Goodman approached the body and observed a gunshot wound to his head. The victim had no pulse. It was clear to her he was deceased. Through investigation, the young male was determined to be Jasmarr Anderson.

Detective Michael Jay of the Delaware County Criminal Investigative Division, (CID) is assigned to the homicide unit and has been so employed since 2008. Detective Jay was working in his capacity as a homicide detective for CID on the evening of July 20, 2013 and responded to the Benjamin Banneker Apartments after the Chester Police Department requested CID's assistance. While on scene, Detective Jay retrieved surveillance footage from the manager's office in the apartment building. The apartment used a "multiplex" system, meaning multiple camera angles are shown on the screen at the same time. After viewing the footage and determining which camera angles would be relevant, Detective Jay saved the footage onto two separate thumb drives to bring back to the station.

Detective Jay along with Detective Sendak of CID went back to the apartment building several times in the next few days to retrieve more video and to take the physical-systems out of the office, which were eventually turned over to the forensic laboratory for the hard drives to be copied. In addition, Detective Jay contacted the New Castle County Police Department, which was able to assist in synchronizing the different camera angles. After thorough investigation, it was determined that the two individuals seen with the victim in the footage were Appellant and David Colon.[7]

[7] After showing the photographs from the footage to several people, including Appellant's parole officer, Agent Donald Vaughn, the man in the video was identified as [Appellant].

After several screens showing all three "hanging out[,"] Jasmarr Anderson's final moments are picked up by camera angles eight and ten. On camera angle eight, the three begin walking towards Jeffrey Street and the east side of the building; Appellant is on the far left of Anderson. As they walk towards the rear of the courtyard, Appellant begins to drop back until he is directly behind Anderson and Colon while Colon is to Anderson's left. The three then walk into the view of camera angle ten. This angle shows Anderson on his cell phone, Colon to his left, and Appellant behind him. In the last frame of Anderson's life, Appellant is seen directly behind him. Seconds later, Anderson is seen falling to the ground and Colon and Appellant are seen running away towards Jeffrey Street.

Detective Adam Sendak is also employed with the Delaware County Criminal Investigation Division Homicide Unit. In addition to being in CID for fourteen years, Detective Sendak spent thirty years with the Chester Police Department. Detective Sendak was away the weekend of Anderson's murder but was assigned to be the lead detective on the case the following Monday.

Detective Sendak met with [] Anderson's family and tried to speak with as many people as possible, which proved difficult; however, this was not surprising to him. In his thirty years with the police department and the thousands of investigations into crimes in Chester, there is a fear of retaliation that often keeps witnesses from talking on the record. Once it was determined that Appellant was the person in the video and was a suspect, Detective Sendak prepared and executed a search warrant on

- 3 -

Appellant's Facebook account. The subscriber information is listed for a "cheddar bob" which the Detectives knew to be the Appellant's street name. The account shows Appellant on July 19, 2013, the day before the murder, uploading a photo wearing a black v-neck t-shirt and jeans, the same outfit that the camera[] from the apartment complex show[ed] him wearing the night of the murder.

After issuing several more search warrants, and completing their investigation, Detective Sendak prepared an arrest warrant for Appellant which was approved on August 27, 2013 and executed the following day.

**Procedural History**

A jury trial was held on October 14 through October 16, 2014. The Commonwealth presented several witness including: Officer Melissa Goodman, Officer Jeffrey Linowski, Detective Michael Jay, Detective John Minkus, Parole Agent Donald Vaugh, and Detective Adam Sendak.

In addition to the police testimony, the Commonwealth also presented Shaquan Cooper who was present on the night of July 20, 2013 at the Benjamin Banneker Apartments. Cooper recalled Anderson (his brother), David Colon and Appellant walking around the corner of the building towards Jeffrey Street, Cooper heard a gunshot and immediately ran over and saw Anderson lying on the ground with a gunshot wound to his head. Eventually, in June of 2014, Cooper gave a statement to police, in which he detailed a conversation he had with Appellant roughly ten days prior to Anderson being shot in which Appellant told him he was going to kill his brother, Jasmarr Anderson. Shortly after Anderson was murdered, Cooper had another run in with Appellant and this time Appellant threated to kill him.

The Commonwealth also played for the jury two separate phone conversations, calls that were placed by Appellant while in George W. Hill Correctional Facility. The first phone call played for the jury occurred on March 28, 2014 and the other on September 4, 2013. On the September 4, 2013[] call Appellant says: "do me a favor. There ain't no three way on this phone, is it. [Y]eah I figured that. Text, uh, text Bro Bro and text Teddy for me and tell 'em I said everybody as far as like Brittany, uh, Fuzz, and all them mo' fuckers, whoever they get at trial to come to court everybody gotta be like I don't remember nothin' or either don't come or they don't remember nothin'."[9]

- 4 -

[9] The authenticity of both phone calls [was] stipulated to by defense counsel and entered into evidence as C45.

The last witness presented at trial was Dr. Bennett Preston, a medical examiner for the County of Delaware who was admitted as an expert in forensic pathology. Dr. Preston performed the autopsy on Jasmarr Anderson and determined that Anderson suffered a single gunshot wound to the left back part of his head, about half an inch from the center of his head. The wound was based on close range firing, placing the gun within two feet of Anderson's head. From the trajectory of the bullet, Dr. Preston could tell that the gun was directly behind Anderson's head. Dr. Preston determined that the cause of death was a gunshot wound and the manner of death was homicide.

After deliberating, the jury found Appellant guilty of Murder in the First Degree[10] and … Possession of a Firearm [by a Person] Prohibited[.][11][][1]  On January 30, 2015, this Court sentenced Appellant to life in prison without parole and a consecutive term of 5-10 years for the Possession of a Firearm [by a Person] Prohibited [conviction].

[10] 18 Pa.C.S. [§] 2502(a)

[11] 18 Pa.C.S. [§] 6105(a)(1)

Trial Court Opinion (TCO), 4/21/15, at 2-7 (internal citations to the record and some footnotes omitted).

Appellant filed a timely notice of appeal, and he also timely complied with the court's order to file a Pa.R.A.P. 1925(b) concise statement of errors

---

[1] The jury's deliberations and verdicts on Appellant's two offenses were bifurcated.  In other words, the jury first rendered a verdict on the murder charge and, after it convicted Appellant of that offense, it was asked to decide the charge of possession of a firearm by a person prohibited.  Before deliberating on that offense, the jury was informed that Appellant had stipulated that on February 20, 2008, he "was convicted of Aggravated Assault, a felony of the first degree…."  N.T. Trial, 10/16/14, at 115.

complained of on appeal. The court filed a Rule 1925(a) opinion on April 21, 2015.

Appellant presents the following six issues for our review, which we have reordered for clarity and ease of disposition:

[I.] The evidence was insufficient to sustain the verdicts of guilty on [m]urder in the first degree and on [possession of a firearm by a person prohibited] because the Commonwealth failed to prove beyond a reasonable doubt that Appellant possessed, used, manufactured, controlled, sold or transferred a firearm or anything that caused the death of Jasmar Anderson.

[II.] Counsel filed a pre-trial motion to discover murder investigation files regarding the August 19, 2013 shooting death of accomplice David Colon. The [t]rial [c]ourt erred when it denied the motion and instead ruled that it would conduct an in camera examination. The [t]rial [c]ourt examined the files and made a determination that they included nothing exculpatory of Appellant.

[III.] Appellant's double jeopardy, former jeopardy and compulsory joinder rights were violated when the [t]rial [c]ourt bifurcated [the possession of a firearm by a person prohibited charge] from the balance of the charges and took separate verdicts. Appellant's sentence on this charge should be vacated.

[IV.] The General Assembly, rather than the courts, determines what new procedures must be created in order to insure fair trials. Sending a jury out a second time is a new procedure, therefore the five to ten year consecutive sentence on [the possession of a firearm by a person prohibited charge] should be vacated. The life without parole sentence on [m]urder should be vacated because the sentencing scheme is disturbed.

[V.] The [t]rial [c]ourt abused its discretion when it overruled the defense objection to characterization by the prosecution witness of behavior depicted in the video in spite of the [c]ourt's prior ruling.

[VI.] The [t]rial [c]ourt abused its discretion when it overruled the defense objection challenging a hypothetical question which had no basis in fact in the record.

Appellant's Brief at 7-8.

Appellant first contends that the evidence was insufficient to sustain his convictions. In **Commonwealth v. Lambert**, 795 A.2d 1010 (Pa. Super. 2002), we set forth our standard of review of such a claim, stating:

> The standard we apply in reviewing the sufficiency of the evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact[-]finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Id.** at 1014 (citations and internal quotation marks omitted).

Appellant challenges his convictions of first-degree murder and possession of a firearm by a person prohibited.

> To find a defendant guilty of first-degree murder a jury must find that the Commonwealth has proven that he or she unlawfully killed a human being and did so in an intentional, deliberate and premeditated manner. It is the element of a willful, premeditated and deliberate intent to kill that distinguishes first-degree murder from all other criminal homicide. Specific intent to kill may be inferred from the defendant's use of a deadly weapon upon a vital part[] of the victim's body.

*Commonwealth v. Sattazahn*, 763 A.2d 359, 363 (Pa. 2000). The offense of possession of a firearm by a person prohibited is defined in 18 Pa.C.S. § 6105. This Court has explained the requirements for proving that offense, stating:

> In order to obtain a conviction under 18 Pa.C.S. § 6105, the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a firearm and that he was convicted of an enumerated offense that prohibits him from possessing, using, controlling, or transferring a firearm. The term "firearm" is defined in that section as any weapon that is "designed to or may readily be converted to expel any projectile by the action of an explosive or the frame or receiver of any such weapon." 18 Pa.C.S. § 6105(i).

*Commonwealth v. Thomas*, 988 A.2d 669, 670 (Pa. Super. 2009).

Appellant focuses the majority of his argument on challenging his firearm offense, contending that the evidence was insufficient because there was no gun in evidence, [and] no testimony on barrel length or concealment…." Appellant's Brief at 41. Initially, section 6105 does not require the Commonwealth to produce the firearm possessed by the prohibited person, nor does it require evidence that the person concealed the weapon. *See Thomas*, *supra*. Moreover, our Supreme Court has held that following section 6105's amendment in 1995 to add a definition of "firearm," as used in that provision, barrel length is no longer an element of an offense under section 6105. *Commonwealth v. Gillespie*, 821 A.2d 1221, 1225 (Pa. 2003) (holding that under the amended version of section 6105, the definition of "firearm" in that provision "includes any weapon capable of discharging a projectile by means of explosion, regardless of the

weapon's barrel length[,]" thus overruling **Commonwealth v. Todd**, 384 A.2d 1215 (Pa. 1978)). Accordingly, Appellant's arguments pertaining to the sufficiency of the evidence to sustain his conviction under section 6105 are meritless.

In regard to Appellant's conviction of first-degree murder, he offers no explicit argument regarding how the evidence was insufficient to sustain that offense. Instead, he presents only a general challenge to the credibility of the Commonwealth's witnesses, which is not an appropriate challenge to the sufficiency of the evidence. **See** Appellant's Brief at 42 (attacking the credibility of Shaquan Cooper); **Commonwealth v. Price**, 616 A.2d 681, 683 (Pa. Super. 1992) (finding that a challenge to the credibility of a witness goes to the weight, not the sufficiency, of the evidence). Appellant also briefly suggests that this Court should view the record in the light most favorable to him, and conclude that the evidence demonstrated that Colon killed Anderson. Appellant's Brief at 43 (stating that this panel should conclude "that the Colon murder was likely in retaliation for Colon's shooting of Anderson; that the angle of the bullet that killed Anderson bears that out; that if [Appellant] told Shaquan Cooper he was going to kill Anderson, he may have referred to Mr. Colon's intentions; and that if [Appellant] tried to obstruct justice via prison telephone, he was trying to protect someone else"). Appellant's request disregards this Court's standard of review, under which we are required to view the evidence in the light most favorable to the Commonwealth, as verdict winner. **See Lambert**, 795 A.2d at 1014.

Applying that standard, and reviewing the record of Appellant's trial, we are satisfied that the evidence was sufficient to convict Appellant of first-degree murder and possession of a firearm by a person prohibited. We agree with the trial court's summary of the evidence that proved both of those crimes:

> The footage from the surveillance cameras at the Benjamin Banneker Apartment Buildings show Appellant, walking away with Anderson and Colon, at first to the left of Anderson. Then, Appellant begins to slow down and drop back to position himself directly behind the victim. As the group turns the corner, we see Appellant begin to raise his hand, [and] within a split second, we see Anderson fall to the ground. Shaquan Cooper, who was there that night, heard a gunshot, ran to see what was going on and saw Anderson's body on the ground, with a gunshot wound to his head. The detectives testified that the two people walking with Anderson in the video were Appellant and David Colon. Appellant told Shaquan he was going to kill his brother, Jasmarr Anderson[,] and after he did, he threatened to kill Shaquan. Appellant did not stop there[;] he made sure to make a call [from prison] and let everyone know they were not to say a word at trial. The evidence was sufficient to sustain a conviction on both charges. The jury heard the evidence, that Jasmarr Anderson was murdered and that the cause of death was a gunshot wound to the head. The jury determined, after listening to all of the evidence, that Appellant was the one who murdered Jasmarr Anderson.

TCO at 9-10.

Based on this evidence, the jury could conclude, beyond a reasonable doubt, that Appellant killed Anderson, and did so in an intentional, deliberate and premeditated manner. The fact that Appellant shot Anderson in the back of the head is enough, alone, to prove his specific intent to kill Anderson. **See Sattazahn**, 763 A.2d at 363. Additionally, it is clear that

- 10 -

Anderson was shot, and because the evidence was sufficient to demonstrate that Appellant was the shooter, he was obviously in possession of a firearm. Appellant stipulated that he had a 2008 conviction for aggravated assault, which precludes him from possessing a firearm under 18 Pa.C.S. § 6105(b). Consequently, the evidence was also sufficient to sustain his firearm conviction.

Appellant next contends that the trial court erred by denying his pretrial motion seeking discovery of "the police file on the murder of David Colon…." Appellant's Brief at 28. "We begin by noting that decisions involving discovery in criminal cases lie within the discretion of the trial court." *Commonwealth v. Smith*, 955 A.2d 329, 394 (Pa. Super. 2008) (*en banc*) (citation omitted). "The court's ruling will not be reversed absent abuse of that discretion." *Id.* (citation omitted).

At a hearing conducted on Appellant's discovery motion, his counsel explained the basis for seeking discovery of Colon's police file, as follows:

> [Defense Counsel]: If I may, Your Honor, the facts of this case, I think there's very little dispute on the facts of this case; that [Appellant] and Mr. Colon were with the victim, actually walking along with the victim. The critical point in time comes when my client and Mr. Colon are literally standing side-by-side and the victim is standing -- not standing, but actually walking in front of them, they're walking side-by-side. And then obviously the victim was shot and dies. Mr. Colon, I believe, Mr. Colon and [Appellant] were suspects in this case from the beginning. The case -- the evidence against [Appellant], the way I understand it, Judge, is a video. Having said that, though, the video doesn't show a gun or the video doesn't show a flash. The video doesn't show anything other than [Appellant's] hands moving. It's been our contention, just like I think when the police were investigating whether it was him or Mr. Colon. Two weeks after

- 11 -

-- they never find Mr. Colon. I know at one point in time, there were certainly police all over Chester looking for Mr. Colon in regards to this homicide. Two weeks after this homicide, Mr. Colon is murdered. My information, Judge, that I can't substantiate it, but my information is that [Colon] was shot and killed in retribution for this particular case because they believe he shot [Anderson]. And so the investigation into Mr. Colon's homicide I believe is relevant. Again, I can't say it is because I haven't seen it. But, I believe it certainly could be relevant if in fact there are people making those statements, they may have information that could lead me to witnesses that could confirm it was Mr. Colon who did the shooting.

N.T. Hearing, 6/12/14, at 3-4.

In response, the Commonwealth first pointed out that it had already provided Appellant with certain information regarding Colon's murder, and it argued that discovery of the entire file on Colon's murder was not appropriate where "[t]he David Colon murder is an ongoing[,] open investigation." *Id.* The Commonwealth also maintained that, "the Commonwealth has a privilege … to conduct that investigation and there's certain confidential information." *Id.* at 5-6. The Commonwealth assured the court that "any exculpatory evidence would be handed over to the [d]efense[,]" but it argued that the defense should not be allowed "to have a fishing expedition to get the entire [file of the] ongoing investigation." *Id.* at 6.

After the Commonwealth presented its argument, defense counsel suggested "that the [c]ourt make an in camera review" of the Colon file, and use the court's discretion, "as somewhat of a neutral observer[,]" to determine whether any information in the file was exculpatory for Appellant.

*Id.* at 6. The court agreed with defense counsel's suggestion, *id.* at 7, and it ultimately reviewed the file and concluded, "after a thorough and careful examination…[,] that nothing exculpatory existed that would warrant turning over the file of an ongoing, open homicide investigation." TCO at 12.

We ascertain no abuse of discretion in the court's ruling on Appellant's discovery motion. First, the court did not deny the motion outright; instead, it accepted *defense counsel's* suggestion that it review the file in camera and determine if there was any exculpatory information that should be disclosed to Appellant. Moreover, while Appellant challenges the court's "fail[ure] to place on the record [its] reasons and findings" for not turning over the entire Colon file to Appellant, he does not point to where in the record he requested that the court present such findings, or objected to the lack thereof. In any event, it was reasonable for the court not to provide an explanation of precisely what information was contained in the file, and why it was not exculpatory for Appellant, considering the confidential nature of the ongoing investigation of Colon's murder. Accordingly, Appellant's second issue is meritless.

In Appellant's third claim, he argues that his double jeopardy rights were violated because "the jury deliberated and rendered verdicts twice[;]" once on the murder charge and once on the section 6105 charge. Appellant's Brief at 38. While Appellant baldly claims "fifth amendment double jeopardy applies[,]" he does not offer any argument or legal authority to support this claim. Appellant's Brief at 38-39. Instead, he

focuses on contending that "the procedural elements" of his case "fall squarely within compulsory joiner [*sic*] doctrine codified by [18 Pa.C.S. §§] 109 and 110." ***Id.*** at 38. Appellant relies on the following portions of those statutory sections:

> When a prosecution is for a violation of the same provision of the statutes and is based upon the same facts as a former prosecution, it is barred by such former prosecution under the following circumstances:
>
> …
>
> (3) The former prosecution resulted in a conviction. There is a conviction if the prosecution resulted in a judgment of conviction which has not been reversed or vacated, a verdict of guilty which has not been set aside and which is capable of supporting a judgment, or a plea of guilty accepted by the court. In the latter two cases failure to enter judgment must be for a reason other than a motion of the defendant.

18 Pa.C.S. § 109(3).

> Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:
>
> (1) The former prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for the same offense) and the subsequent prosecution is for:
>
> > (i) any offense of which the defendant could have been convicted on the first prosecution;
> >
> > (ii) any offense based on the same conduct or arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial and occurred within the same judicial district as the former prosecution unless the court ordered a separate trial of the charge of such offense[.]

- 14 -

18 Pa.C.S. § 110(1)(i)-(ii).

Preliminarily, in Appellant's Rule 1925(b) statement, he presented this claim, as follows: "Appellant's double jeopardy rights were violated when the [t]rial [c]ourt bifurcated Murder in the first degree from [p]ersons not to possess, use, manufacture, control, sell or transfer firearms." Pa.R.A.P. 1925(b) Statement, 4/10/15, at 1 (unnumbered). Appellant made no mention of 18 Pa.C.S. §§ 109 or 110 and the trial court did not address Appellant's argument in this regard. Thus, his claim that the bifurcated procedure employed by the trial court violated those statutes is waived. **See** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

Additionally, Appellant also waived his claim that his 'double jeopardy rights' were violated by the bifurcation of the murder and section 6105 charges. As the trial court pointed out, "there was no objection by trial counsel" in this regard before the trial on the murder charge, or prior to the jury's second deliberation on the section 6105 violation. Appellant even concedes that he consented to the bifurcated proceedings. **See** Appellant's Brief at 34 ("There is no disagreement that the [t]rial [c]ourt with the consent of all counsel bifurcated this trial."). By not objecting at either of these junctures, Appellant consented to the bifurcation of the charges. He

- 15 -

cannot now argue that that procedure violated his double jeopardy rights.[2]
*See Commonwealth v. Peters*, 373 A.2d 1055, 1057 (Pa. 1977) (holding
that the failure to raise a double jeopardy claim prior to the commencement
of the second trial waives that issue); *see also Commonwealth v. Perillo*,
626 A.2d 163, 168 n.6 (Pa. Super. 1993) (noting that in *Commonwealth v.
Gilman*, 401 A.2d 335 (Pa. 1979), our Supreme Court "held that a
defendant waived his claim that retrial amounted to double jeopardy
because he did not move to dismiss prior to retrial").

In Appellant's next issue, he argues that the bifurcation of the
proceedings violated this Court's holding in *Commonwealth v. Valentine*,
101 A.3d 801 (Pa. Super. 2014). *Valentine* was a decision by this Court
issued after the Supreme Court of the United States ruled, in *Alleyne v.
United States*, 133 S.Ct. 2151, 2163-64 (2013), that any fact that triggers
application of a mandatory minimum sentence is an element of the offense
and must be determined by the fact-finder beyond a reasonable doubt. In
light of *Alleyne*, the trial court in *Valentine* provided the jury with a special
verdict slip, asking it to determine whether the factual predicates for
imposing a mandatory minimum sentence had been proven beyond a
reasonable doubt. *Valentine*, 101 A.3d at 804-805. On appeal, this Court
concluded that "the trial court performed an impermissible legislative

---

[2] We also point out that Appellant offers no meaningful argument, or citation
to any legal authority, to support his double jeopardy claim.

function by creating a new procedure in an effort to impose the mandatory minimum sentences in compliance with **Alleyne**." **Id.** at 811.

Appellant contends that, "**Valentine** is not limited to **Alleyne** mandatory minimum maladies but its holding applies to any effort a [t]rial [c]ourt makes to legislate a new procedure from the bench." Appellant's Brief at 36 (citation omitted). We disagree. In **Valentine**, the language of the statute at issue, a mandatory minimum sentencing provision, declared that *the court* must determine, by a preponderance of the evidence, the fact triggering application of the mandatory minimum sentence. **See** 42 Pa.C.S. § 9713(c). In attempting to satisfy **Alleyne**, the trial court in **Valentine** had contravened the explicit procedure set forth by the legislature in section 9713(c), and created a new procedure of presenting the triggering fact to the jury on the verdict slip. In reversing the trial court in **Valentine**, this Court carefully limited our language to situations involving **Alleyne** and mandatory minimum sentencing provisions. **See Valentine**, 101 A.3d at 811 ("We find that it is manifestly the province of the General Assembly to determine what new procedures must be created *in order to impose mandatory minimum sentences in Pennsylvania following **Alleyne***."; "[T]he trial court performed an impermissible legislative function by creating a new procedure *in an effort to impose the mandatory minimum sentences in compliance with **Alleyne**.*") (emphasis added).

For these reasons, we disagree with Appellant that **Valentine** extends to the circumstances of this case. Here, there was no mandatory minimum

sentence or **Alleyne** issue and, therefore, Appellant's claim that **Valentine** applies is meritless on its face. Furthermore, unlike the trial court in **Valentine**, the court in this case did not contravene any statutory language when it bifurcated Appellant's murder and section 6105 charges. Indeed, the trial court employed a bifurcated procedure not only with the consent of Appellant, but also to avoid any prejudice he might suffer from the jury's being informed of his prior aggravated assault conviction. Accordingly, Appellant's fourth claim is meritless.

In Appellant's fifth issue, he contends that the trial court abused its discretion when it permitted Detective Jay to testify about "behavior depicted in the video" of the shooting. Appellant's Brief at 40. Initially, we note:

> The standard of review employed when faced with a challenge to the trial court's decision as to whether or not to admit evidence is well settled. Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the trial court's decision absent a clear abuse of discretion. **Commonwealth v. Hunzer**, 868 A.2d 498 (Pa. Super. 2005). Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will. **Id.**

**Commonwealth v. Young**, 989 A.2d 920, 924 (Pa. Super. 2010) (citation omitted).

Appellant's entire argument in support of his fifth claim consists of the following paragraph:

- 18 -

Before Detective Jay testified to authenticate a video of the shooting the [c]ourt ruled as follows: "(Defense Counsel) …, I'm going to allow Detective Jay to testify as to what he observes on the video. He will not be allowed to say -- identify the shooter or anything. If he sees the arm being raised, he can interpret [and] you can cross-examine him on it. That's where we are." But the video quality was bad and the prosecutor needed Detective Jay to say that it showed [Appellant] moving toward Mr. Anderson. The trial court may have let the video speak for itself.

Appellant's Brief at 40. Appellant's underdeveloped argument, which contains no citation to the record or to any legal authority, waives this issue for our review. *See Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) (noting that the "brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities" and that "when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived").

Finally, in Appellant's sixth issue, he contends that the trial court abused its discretion by allowing the Commonwealth to ask the pathologist, Dr. Bennet Preston, the following hypothetical question:

[The Commonwealth:] Doctor, the injuries you described, if I'm an individual and I'm the shooter, I'm holding a gun behind someone's head and the victim's head is in front of me and it is slightly turned to the left, would I see a similar result?

N.T. Trial, 10/16/14, at 26. Defense counsel objected, stating, "[t]here's no facts in evidence. It's not in his report." *Id.* The court overruled the objection and the doctor answered the hypothetical question, as follows:

- 19 -

[Dr. Preston:] In a hypothetical like I said, as I said before, I can only tell you where the gun was. Now if I'm walking[,] for argument sake[,] and the person, whoever that person was, is behind me and I'm walking like this and I turn slightly like this to the side and the guy, whoever the person was, shot me like this you would get the same trajectory.

*Id.* at 27.

Appellant contends that this hypothetical question and response by Dr. Preston was improper because it was based on a fact not in evidence or contained in the doctor's report, *i.e.*, that the victim's head was turned slightly to the left. He argues that the admission of this evidence prejudiced him because, before Dr. Preston answered the hypothetical, "the uncontroverted scientific evidence pointed to Mr. Colon" as being the shooter.[3] Appellant's Brief at 24. He maintains that the doctor's response to the hypothetical tended "to prove that the shot could have come from [Appellant's] angle[,]" a fact which, according to Appellant, no other evidence demonstrated. *Id.* at 23.

We need not assess whether it was error for the court to admit the Commonwealth's hypothetical question and Dr. Preston's answer. Even if this evidence was improper, we agree with the Commonwealth that the error of admitting it was harmless. *See* Commonwealth's Brief at 19.

> "The harmless error doctrine, as adopted in Pennsylvania, reflects the reality that the accused is entitled to a fair trial, not a perfect trial." ***Commonwealth v. Rasheed,*** 536 Pa. 567, 640

---

[3] We point out that Appellant does not cite to what portion(s) of the record contains the 'uncontroverted scientific evidence' that Colon was the shooter.

A.2d 896, 898 (1994); **Commonwealth v. Story**, 476 Pa. 391, 383 A.2d 155 (1978). We have described the proper analysis as follows:

> Harmless error exists if the record demonstrates either: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

> **Commonwealth v. Hawkins**, 549 Pa. 352, 701 A.2d 492, 507 (1997); **Commonwealth v. Williams**, 524 Pa. 404, 573 A.2d 536 (1990).

**Commonwealth v. Hairston**, 84 A.3d 657, 671-72 (Pa. 2014).

Here, we conclude that any prejudicial effect of the admission of the hypothetical question and Dr. Preston's response was insignificant in comparison to the evidence establishing Appellant's guilt. Notably, after Dr. Preston answered the hypothetical question set forth *supra*, he was asked a second hypothetical question (without objection by the defense), and answered as follows:

> [The Commonwealth:] And if someone was standing -- if the shooter was standing on your left, completely on your left, and had made a similar shooting, how would the victim's head have to be positioned?

> [Dr. Preston:] Then the gun, like I said, was directly at the head then the head would have to be turned a little bit like this and then to get that trajectory the head would have to be turned slightly to right to get that trajectory.

N.T. Trial, 10/16/14, at 27. Essentially, these two hypotheticals inferred to the jury that if the victim's head was turned to the left, it supported that

- 21 -

Appellant was the shooter, and if the victim's head was turned to the right, Colon could have been the shooter. However, the Commonwealth did not attempt to prove which way the victim's head was turned; thus, the doctor's responses to the hypothetical questions were not especially compelling evidence regarding the guilt of *either* Appellant or Colon.

Consequently, the prejudicial impact of the first hypothetical question, and Dr. Preston's answer, was minimal, at best, and the evidence supporting Appellant's guilt clearly overcame that prejudice. Specifically, the video from the apartment complex showed Appellant's positioning himself directly behind Anderson, and raising his arm immediately before Anderson fell to the ground. Dr. Preston testified that the gun that killed Anderson was pointed at the back of Anderson's head and slightly to the left, which supported that Appellant, who was standing behind the victim, fired the weapon. The Commonwealth also presented a witness, Shaquan Cooper, who testified that Appellant had threatened to kill Anderson not long before the murder. Finally, the Commonwealth proffered evidence of phone calls Appellant made from prison in which he attempted to convince witnesses not to appear for trial, or to testify that they did not remember anything about the shooting. All of this evidence, taken together, was ample proof that Appellant committed the murder, and clearly outweighed any prejudicial impact caused by Dr. Preston's response to the Commonwealth's hypothetical question. Accordingly, Appellant's final issue is meritless.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/10/2016