626 A.2d 118

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Anthony REID, Appellant.**

Supreme Court of Pennsylvania.

Argued Dec. 8, 1992.

Decided May 27, 1993.

510

F. Emmett Fitzpatrick, Philadelphia, for appellant.

Ronald Eisenberg, Deputy Dist. Atty., Catherine Marshall, Chief, Appeals Div., Hugh J. Burns, Jr., Philadelphia, and Robert A. Graci, Chief Deputy Atty. Gen., for appellee.

Before LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

Reid was convicted of first degree murder, criminal conspiracy, violation of the Uniform Firearms Act, and possession of an instrument of a crime by a jury sitting in the Court of Common Pleas of Philadelphia County on August 13, 1990. After a penalty phase hearing the next day, he was sentenced to death. The jury found two aggravating and no mitigating circumstances. On December 5, 1990, post verdict motions were heard and denied and Reid was additionally sentenced to

five to ten years for criminal conspiracy, two and one half to five years for the Uniform Firearms Act violation, and two and one half to five years for possession of an instrument of crime. These sentences run consecutive to the death sentence and each other. This appeal followed pursuant to 42 Pa.C.S. § 722(4) (automatic review of death sentences).

The facts of the case are that in the early evening of March 7, 1989 a group of boys was throwing snowballs at passing cars in the neighborhood of 29th and Tasker Streets in Philadelphia. The car driven by Reid was struck as it drove by. Reid stopped the car and got out. The boys scattered as Reid shouted at them. Reid's two passengers also exited the car. Reid asked two bystanders whether they were involved in throwing the snowballs and they denied any participation. Reid reached his hand inside his jacket and replied, "You better hope none was your family." To his passengers he said, "Well, let's at least get one of them." A third bystander, apparently not realizing what Reid intended, suggested that Reid ride around the corner in order to "get one."

As Reid and his passengers drove around the block, some of the boys who had thrown the snowballs pulled a stop sign into the middle of a street which Reid would drive down. When he reached the stop sign, Reid drove the car on the sidewalk, and then gunfire came from the passenger side of Reid's car. Michael Waters, a sixteen year old youth, was killed by a bullet of unknown caliber, which struck him in the back and exited his chest. Reid and his passengers then fled.

Two bullets and two shell casings were found. One thirty-eight caliber bullet fell from Waters' jacket at the hospital; another was recovered from a window frame. The bullet in Waters' jacket had not entered his body. The two shell casings were ten millimeter caliber.

Six days later, in a separate incident, Reid used a ten millimeter handgun to murder another victim, Neal Wilkinson. In this incident, Reid and a confederate, Bowman, asked Wilkinson and Woods to accompany them to collect a debt. When Wilkinson and Woods ascended stairs in the projects in

order to knock on the door of the alleged debtor, Bowman shot them both with a shotgun, and then Reid shot them again with a handgun. Miraculously, Woods survived and gave police a statement naming Reid as one of two shooters. Ten millimeter shell casings found at the Wilkinson murder scene were fired from the same gun as was used in the Waters shooting six days earlier.

The two aggravating circumstances presented by the Commonwealth and found by the jury in the case at bar were that Reid had created a grave risk of death to persons other than the victim and that Reid had a significant history of violent felonies. He was convicted of first degree murder and criminal conspiracy in the Wilkinson murder, and in yet a third case, he was convicted of conspiracy to murder Mark Lisby.

■ Reid's first claim is that it was error for the trial court to allow into evidence testimony about an unrelated murder which occurred six days after the Waters murder. The Commonwealth's reason for seeking to admit this information was its theory that empty shell casings found at both murder scenes from the same handgun and Reid's identification as one of two shooters in the second murder make the evidence admissible to show that Reid was a shooter in both murders. In short, the evidence with respect to the second murder was offered to establish the identity of Reid as a shooter in the first murder.

In *Commonwealth v. Jones*, 457 Pa. 563, 575, 319 A.2d 142, 149 (1974), this court held testimony that a defendant charged with murder was in possession of the murder weapon two to five hours after the murder is admissible because it tends to show the identity of the person who committed the murder.

In the present case, as in *Jones*, there were no eyewitnesses. Evidence of Reid's guilt, therefore, must be circumstantial. Reid asserts that admission of evidence concerning the second murder does not establish his identity as the shooter in the first murder because (1) no one established that he was in possession of any weapon, including a ten millimeter handgun; (2) the shooting came from the passenger side of Reid's car

when Reid was driving, and two other persons were in the car; (3) the shell casings found at the scene of the first murder may have been there for some time before the murder; (4) the witness-victim in the second murder recanted his earlier statements to police and testified at trial that Reid did not shoot him or the other victim; (5) this witness stated that at the time the witness was shot, Reid possessed a .357 magnum which he had obtained from someone else, not a ten millimeter handgun; and finally, (6) that the only conclusion which may be drawn from the Commonwealth's evidence is that shell casings from the same ten millimeter handgun were found at both murder scenes.

The Commonwealth asserts that as to the first murder (boys throwing snowballs), Reid could easily have leaned across the seat to shoot from the passenger side of the car; the ten millimeter shell casings came from the same weapon as the casings found at the scene of the second murder; although the projectile which killed the boy in the first murder was not recovered, so its caliber is not known, the projectile recovered from the head of the victim in the second murder was of ten millimeter caliber. As to the second murder (shotgun and handgun wounds inflicted at close range in a hallway), the Commonwealth asserts that the surviving witness who denied at trial that Reid was one of the two people who shot him and left him for dead had given statements to police shortly after the shooting identifying Reid as one of the shooters, the one who used a handgun.

Since the circumstances of the second murder (shotgun and handgun wounds inflicted at close range in a hallway) place a weapon used in both murders in the hands of Reid at the time of the second murder, the question is whether a jury may draw an inference that Reid was the shooter in the first murder. Because empty shell casings from the same weapon were found at both murder scenes, and Reid was identified as the handgun shooter in the second murder, in which a ten millimeter bullet was found in the victim's head, evidence of the second murder is admissible to establish Reid's identity as the shooter in the first. Reid's real objection, although

couched in terms of admissibility of evidence, is to the weight of the evidence. That is for the jury. This claim of error is without merit.

■ Next, Reid argues that it was error to allow the prior inconsistent statements of Darryl Woods, the victim who survived the second shooting, as substantive evidence of Reid's participation in the second murder in which Reid used a handgun and a confederate used a shotgun to kill Wilkinson and attempt to kill Woods. Although Woods had given police three statements shortly after he was shot in which he named Reid as the person who had shot him and Wilkinson with a handgun, at trial, Woods denied that Reid was the shooter and claimed that he could not remember many of the questions or his answers given in the prior statements to police.

This court has recently clarified when prior inconsistent statements may be used as substantive evidence as follows:

> In *Commonwealth v. Brady*, 510 Pa. 123, 507 A.2d 66 (1986), we held that otherwise admissible prior inconsistent statements of a declarant who is a witness in a judicial proceeding and is available for cross-examination may be used as substantive evidence to prove the truth of the matters asserted therein. *Id.* at 131, 507 A.2d at 70. We set forth in *Commonwealth v. Lively*, [530] Pa. [464], 610 A.2d 7, also decided today, that otherwise admissible prior inconsistent statements were limited to a statement that had been given under oath at a formal legal proceeding; or a statement that had been reduced to a writing signed and adopted by the witness; or a statement that is a contemporaneous verbatim recording of the witness' statement.

*Commonwealth v. Burgos*, 530 Pa. 473, 610 A.2d 11, 14 (1992).

Woods was confronted with his prior statements in open court. These statements, taken on March 22, 1989, March 23, 1989 and April 8, 1989, were recorded verbatim by police officers contemporaneously with Woods' making the statements while he was incapacitated in the hospital after the

shooting. Because of medical procedures, Woods was unable to sign two of the three statements, but he did sign each page of the one taken on March 23, 1989. Because the Woods prior inconsistent statements were contemporaneously recorded verbatim statements, they were properly admitted as substantive evidence of the truth of the matters asserted therein. This claim is, therefore, without merit.

Next, Reid claims that certain evidence was improperly admitted at the penalty phase of the trial. Specifically, Reid contends (1) it was error to admit evidence that he was charged with aggravated assault in the Wilkinson (snowball) murder, when that charge was withdrawn; (2) it was error to admit evidence that Reid was convicted in yet a third case of conspiracy to commit murder, the Lisby case, when the jury in that case was hung on whether Reid was guilty of that murder;[1] (3) the conviction of murder in the Wilkinson case did not satisfy the statutory requirement of a significant history of felony convictions involving violence since the killing took place days after the Waters killing; (4) reference was made to the fact that the killing in the Lisby case (in which Reid was convicted of conspiracy to commit murder) concerned a debt to a drug organization, which improperly prejudiced Reid.

These claims are without merit. The evidence of which Reid complains was admitted for the purpose of proving that Reid "has a significant history of felony convictions involving the use or threat of violence to the person." 42 Pa.C.S. § 9711(d)(9). The evidence was that Reid was convicted of first degree murder in the Wilkinson case and that he was convicted of conspiracy to murder in the Lisby case. These offenses constitute a significant history of violent felony convictions, and were, therefore, properly admitted as aggravating circumstances.

1. Reid was subsequently convicted of first degree murder for killing Mark Lisby and was sentenced to death. The appeal in that case is currently before this court.

■ Concerning the claim that the Commonwealth improperly stated Reid was charged with aggravated assault in the Wilkinson case, it is accurate that the prosecutor mistakenly believed that Reid, who was convicted of the murder of Wilkinson, was also convicted of aggravated assault in that case. The aggravated assault charge was withdrawn because Reid was arraigned improperly on that charge, but the prosecutor was unaware of the withdrawal of the charge. Reid was not prejudiced by this error because the jury was instructed that it could consider only convictions, not charges; the jury was told that the charge was withdrawn; and Reid's murder and conspiracy convictions in the same case overshadowed the misstatement of the less serious charge.

■ With respect to the assertion that it was improper to introduce evidence of a conviction of conspiracy to murder in the Lisby case when the jury in that case was unable to reach a verdict on the murder charge, Reid offers no plausible rationale for viewing the admission of such evidence as improper. Reid was convicted of conspiracy to murder whether or not he was convicted of anything else in that case, and evidence of the conviction was properly admitted to prove a significant history of violent felony convictions. Reid also complains that he was improperly prejudiced by reference to the fact that the killing in the Lisby case concerned drugs. In *Commonwealth v. Beasley*, 505 Pa. 279, 289, 479 A.2d 460, 465 (1984), this court stated:

> [R]eason impels that the construction of the term "convictions" in 42 Pa.C.S.A. § 9711(d)(9) be such as to permit consideration of the essential and necessary facts pertaining to the convictions, including the circumstances of the crimes and the sentences imposed.

Based on the *Beasley* rationale, this claim is without merit.

■ Reid's next claim is that the conviction in the Wilkinson case does not constitute part of a significant history of violent crime convictions because the killing was committed six

days after the killing in this case. In *Commonwealth v. Haag,* 522 Pa. 388, 407, 562 A.2d 289 (1989), this court stated:

> [I]n construing provisions of the sentencing code relating to aggravating circumstances, we have allowed convictions arising from crimes committed after the subject offense to be introduced at the sentencing stage. Under 42 Pa.C.S. § 9711(d)(9), which makes it an aggravating circumstance that a "defendant has a significant history of felony convictions involving the use or threat of violence to the person," convictions for offenses occurring after the subject offense have been held admissible.

The Wilkinson conviction was, therefore, properly admitted and this claim is meritless.

■  Next, Reid claims that the evidence is insufficient to convict of first degree murder.[2]  Our review of sufficiency is "whether the evidence, and all reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish all the elements of the offense(s) beyond a reasonable doubt." *Commonwealth v. Williams,* 532 Pa. 265, 615 A.2d 716, 719 (1992). Viewing the evidence in the light most favorable to the Commonwealth, Reid made threats about what he would do to the boys who threw snowballs at his car and chased the boys while driving his car.  As the boys ran, gunfire flashed from the windows of Reid's car, killing Michael Waters.  This, coupled with ten millimeter casings, found at the scene of the Waters killing and also at the Wilkinson killing six days later, which were fired from the same gun that Reid used to kill Wilkinson, is sufficient to convict beyond a reasonable doubt.  The claim is without merit.

■  Finally, we are required to review the sentence of death in this case with respect to its proportionality to sen-

---

**2.**  We address this claim because Reid has raised it and also because we are required in all death penalty cases to examine the evidence for sufficiency. *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 26 n. 3, 454 A.2d 937, 942 n. 3 (1982).

tences imposed in similar cases. *Commonwealth v. Frey*, 504 Pa. 428, 443, 475 A.2d 700, 707–08 (1984). The review concerns cases in which the aggravating circumstances were a significant history of felony convictions involving the use or threat of violence to the person, 42 Pa.C.S. § 9711(d)(9), and the creation of a grave risk of death to another person in addition to the victim of the offense, 42 Pa.C.S. § 9711(d)(7).[3] No mitigating circumstances were found by the jury in this case. Our review indicates that the death penalty has been imposed in a substantial number of such cases. The sentence is, therefore, neither excessive nor disproportionate as compared to sentences imposed in similar cases. Additionally, the record affords no reason to believe that the sentence was imposed as a result of passion, prejudice or other arbitrary factor, 42 Pa.C.S. § 9711(h)(3)(i). Accordingly, the sentence of death is affirmed.[4]

NIX, C.J., did not participate in the consideration or decision of this case.

---

3. We are required by 42 Pa.C.S. § 9711(h)(4) to determine whether the aggravating circumstances are supported by sufficient evidence. The prior convictions were established by testimony of the clerk of quarter sessions. The risk to others was established by evidence that twelve to fourteen others were in the line of fire when Waters was killed. The aggravating circumstances have been, therefore, established beyond a reasonable doubt.

4. The Prothonotary of the Supreme Court is directed to transmit the complete record in this case to the Governor, 42 Pa.C.S. § 9711(i).