J-S57017-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JAMES LAWRENCE, | |
| Appellant | No. 1760 WDA 2015 |

Appeal from the Judgment of Sentence June 24, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0014084-2013

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN and STRASSBURGER,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED SEPTEMBER 12, 2016**

Appellant, James Lawrence, appeals from the judgment of sentence entered on June 24, 2015, in the Allegheny County Court of Common Pleas. We affirm.

The trial court set forth the relevant facts and procedural history of this matter as follows:

> On February 27, 2013, Appellant was at Summer Kurley's residence in the Sheraden section of the City of Pittsburgh with Jerrick Lane-Bryant, Dorian Peebles, and Devontay McFadden. (T.T. 142).[6] Appellant and Kurley were in a romantic relationship at the time. Kurley allowed Appellant to use her vehicle, and Lane-Bryant typically drove Appellant. (T.T. 143, 247-248). That evening, Appellant received a phone call, and consequently told Lane-Bryant that he needed a ride. (T.T. 143).

---

[*]  Retired Senior Judge assigned to the Superior Court.

[6] The designation "T.T." followed by numerals refers to Trial Transcript, June 1-4, 2015.

Lane-Bryant used Kurley's vehicle to drive Appellant, Peebles, and McFadden to Red's Bar in the Allentown section of the City of Pittsburgh. At approximately 11:45 P.M. Lane-Bryant parked the vehicle on Warrington Avenue near the entrance to Red's Bar. (T.T. 41, 144). Appellant and Peebles were each carrying their own [.]40 caliber firearm, but Red's Bar had security guards at the entrance checking for weapons. Appellant concealed his firearm on his person by hiding it inside his underwear. Peebles left his firearm in the vehicle. (T.T. 83, 144-145, 192). Lane-Bryant locked the vehicle and returned the keys to Appellant, and the group walked to Red's Bar. The group passed through security as Appellant's concealed firearm was not detected. (T.T. 145-146).

The group ordered drinks, and then proceeded to the upstairs section of Red's Bar. Appellant and Peebles went to the bar, while McFadden and Lane-Bryant went to a separate area that had strippers performing. (T.T. 146-147). At approximately 12:50 A.M., Lane-Bryant returned downstairs. Appellant, Peebles, and McFadden remained upstairs. (T.T. 147-148).[7]

[7] The date changed to February 28, 2013, while the group was at Red's Bar.

Tiona Jackson, Nigel Pryer, and Chanel Pamplin were also at Red's Bar that evening. Jackson and Pamplin sat at the bar, while Pryer walked around. At 1:25 A.M., Jackson, Pryer, and Pamplin left Red's Bar and walked towards Jackson's vehicle, which was parked nearby on Vincent Street - one block from the bar. Jackson and Pryer walked behind Pamplin. (T.T. 54-55, 57-58, 72, 93, 234-235, 241).

Immediately after Jackson, Pryer, and Pamplin left, Appellant walked downstairs, followed by Peebles and McFadden. Appellant told Lane-Bryant, "yo, we've got to go." (T.T. 148, 234-235). Lane-Bryant said he would leave after he finished his drink, but Appellant grabbed Lane-Bryant's drink, handed him the keys, and pointedly told him, "No, we've got to go now." (T.T. 148-149, 216). At 1:27 A.M. Appellant, Lane-Bryant, Peebles, and McFadden exited the bar and ran to Kurley's vehicle. (T.T. 149, 214-216). They resumed their original seating

- 2 -

arrangement: Lane-Bryant in the driver's seat, Appellant in the front passenger seat, Peebles in the rear right passenger seat, and McFadden in the rear left passenger seat. (T.T. 150).

Appellant directed Lane-Bryant to drive past Red's Bar, turn around in an alley, and proceed back onto Warrington Avenue. When the vehicle was at the intersection of Warrington Avenue and Vincent Street, Appellant told Lane-Bryant to stop the vehicle. (T.T. 59, 149-150, 276).

Appellant turned around in his seat to Peebles and asked him, "Are you ready?" (T.T. 59, 150). Appellant and Peebles exited the vehicle with their firearms and ran onto Vincent Street where Jackson, Pryer, and Pamplin were walking. Appellant and Peebles both discharged their firearms at Jackson, Pryer, and Pamplin as the trio walked to their vehicle. (T.T. 58, 60, 62, 82-83, 149-150). A total of ten shots were fired by Appellant and Peebles. Jackson and Pryer were both struck and felled by the gunfire. Appellant and Peebles ran back to their vehicle and Appellant yelled at Lane-Bryant to "drive off." (T.T. 60-61, 87, 104, 151).

Police and medics responded to the scene and attempted to provide aid to Jackson, but she was not breathing, and was pronounced dead on the scene. A gunshot wound to her left breast perforated her heart, diaphragm, and liver, causing extensive and fatal hemorrhaging. As a result of this gunshot wound, she went into shock, lost consciousness, and died within a few minutes. She suffered four additional gunshot wounds to the leg and buttocks. (T.T. 111, 113-120, 122[-]126).

Pryer also suffered multiple gunshot wounds and could not move when medics arrived on scene. When officers attempted to speak with him, he kept repeating, "get me out of here." (T.T. 44, 52-53). Pryer was transported to the hospital and received medical care. Once he was stable, officers attempted to interview him, but he was not cooperative. Officers again returned to show him a photo array of suspects, but Pryer refused to look at the photo array. Pryer remained uncooperative and did not testify at trial. (T.T. 88-90, 93).

As Lane-Bryant drove away from the shooting, surprised by what had just happened, he asked Appellant, "what the fuck?" (T.T. 151). Appellant responded, "Mind your business.

- 3 -

What you just seen, what just happened, don't worry about that shit. You bring that conversation up and it's going to be a problem." (T.T. 151). The next day, Appellant again warned Lane-Bryant, "Yo, I'm telling you now, what went on last night, that shit, you know what I'm saying, don't bring that up, don't talk about it to anybody. Keep your fucking mouth shut and there won't be a problem." (T.T. 152-153).

Approximately one month later, on March 30, 2013, Appellant used the same [.]40 caliber firearm in a separate fatal shooting in the Sheraden section of the City of Pittsburgh. (T.T. 158, 171, 256, 320). Following that homicide, Appellant fled to Atlanta, Georgia. While in Atlanta, Appellant learned that Peebles was arrested for the February 28, 2013 shooting of Jackson and Pryer. From Atlanta, Appellant telephoned his girlfriend Kurley in Pittsburgh, and in that conversation told her that Peebles would not snitch on Appellant because they were both "wodi wodi," meaning that they both shot at Jackson, Pryer, and Pamplin on February 28, 2013. (T.T. 252-253, 261, 267-274). Nonetheless, police were able to view the surveillance video from the bar and interview Pamplin, Lane-Bryant, and Kurley. As a result of their investigation, Appellant was identified as one of the shooters in the shooting of Jackson and Pryer. Appellant subsequently returned to Pittsburgh, and the Western Pennsylvania Fugitive Task Force of the U.S. Marshals Service located Appellant within Pittsburgh, and arrested him for the shooting of Jackson and Pryer, as well as the March 30, 2013 homicide in Sheraden. (T.T. 231, 251, 281-282).

Trial Court Opinion, 4/20/16, at 4-8.

On June 1, 2015, Appellant proceeded to a jury trial, at the conclusion of which Appellant was found guilty of first degree murder, conspiracy (first degree murder), conspiracy (aggravated assault), aggravated assault, carrying a firearm without a license, and recklessly endangering another person [("REAP")].

On June 24, 2015, Appellant was sentenced by the Trial Court as follows:

Count one: first degree murder - life imprisonment;

- 4 -

Count two: conspiracy (first degree murder) - six to twelve years incarceration to be served consecutive to the period of incarceration imposed at count one;

Count three: aggravated assault - three to six years incarceration to be served consecutive to the period of incarceration imposed at count two;

Count four: conspiracy (aggravated assault) - two to four years incarceration to be served consecutive to the period of incarceration imposed at count three;

Count five: carrying a firearm without a license - two to four years incarceration to be served consecutive to the period of incarceration imposed at count four.[1]

On June 30, 2015, Appellant filed a post sentence motion, requesting an additional thirty days to amend the post sentencing motions once the transcripts were received. On July 7, 2015, the Trial Court granted Appellant's request for an extension. On October 28, 2015, Appellant filed an amended post sentencing motion, which the Trial Court denied on October 30, 2015.

Trial Court Opinion, 4/20/16, at 2-3.

On November 6, 2015, Appellant filed a timely notice of appeal. While the docket does not reflect an order directing Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), Appellant filed a concise statement on November 12, 2015. On April 20, 2016, the trial court filed an opinion addressing the claims Appellant raised.

On appeal, Appellant presents the following issues for this Court's consideration:

_____

[1] No further penalty was imposed on the REAP conviction. Sentencing Order, 6/24/15, at unnumbered 1.

1. Did the trial court err in denying Appellant's post[-]sentencing motions since the trial court erred in admitting highly prejudicial Pa.R.E. 404 (b) testimony, from several witnesses, regarding Appellant's participation in the [March 30, 2013] "Party Bus" homicide at 12037-2013, since not only was the evidence not probative, but it was highly prejudicial to Appellant, thereby depriving him of a fair jury trial?

2. Did the trial court err in denying Appellant's post[-]sentencing motions since Appellant's murder one, aggravated assault, criminal conspiracy, VUFA and REAP convictions were against the weight of the evidence since key Commonwealth witnesses Lane-Bryant and Kurley were incredible, unreliable & self-serving witnesses who only testified against Appellant so that they could avoid their own possible murder[-]one convictions and life without parole sentences?

Appellant's Brief at 3 (full capitalization omitted).

In Appellant's first issue, he challenges the admissibility of evidence regarding his participation in the March 30, 2013 shooting and avers that said evidence was admitted in violation of Pa.R.E. 404(b). It is well settled that the admissibility of evidence is left to the sound discretion of the trial court, and we "will reverse the trial court's decision only if the appellant sustains the heavy burden to show that the trial court has abused its discretion." *Commonwealth v. Brown*, 134 A.3d 1097, 1105 (Pa. Super. 2016). Additionally:

> It is not sufficient to persuade the appellate court that it might have reached a different conclusion; it is necessary to show an actual abuse of the discretionary power. An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly

> unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Id*. at 1105-1106 (citation omitted).

Moreover, evidence of "other crimes, wrongs, or other acts" is inadmissible to prove a defendant's bad character or his propensity for committing criminal acts. Pa.R.E. 404(b)(1); **Commonwealth v. Kinard**, 95 A.3d 279, 284 (Pa. Super. 2014) (*en banc*) (citation omitted). However, such evidence is admissible when it is relevant for another purpose, including motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. **Id**.; Pa.R.E. 404(b)(2). Such evidence may be admitted "only if the probative value of the evidence outweighs its potential for unfair prejudice." **Kinard**, 95 A.3d at 284; Pa.R.E. 404(b)(2).

The trial court aptly addressed this issue as follows:

> Here, the firearm used by Appellant in the February 28, 2013 shooting of Jackson and Pryer was also used by Appellant during a subsequent shooting on March 30, 2013. While the firearm itself was not recovered from this second shooting, Appellant was identified by eyewitnesses as shooting Steven Lee on March 30, 2013, with a firearm that matched the description of the firearm used in the shooting of Jackson and Pryer. Furthermore, shell casings from the March 30, 2013 Sheraden shooting and shell casings found at the scene of the February 28, 2013 shooting matched each other and were discharged from the same [.]40 caliber firearm. (T.T. 82-83, 104, 160-166, 171, 192, 254-256, 285-293, 303, 309-310, 319-321, 327-328).
>
> Thus, the evidence established that Appellant used the same firearm during both shootings, and the evidence regarding the second shooting was admissible to prove the identity of Appellant as one of the individuals who shot and killed Tiona Jackson. *See Commonwealth v. Reid*, 626 A.2d 118, 121 (Pa. 1993) (evidence of second murder was admissible to prove

- 7 -

identity of defendant as shooter in the first murder where empty shell casings from the same weapon were found at both murder scenes, and defendant was identified as the shooter in the second murder). The Trial Court did not err in admitting this evidence for the limited purpose of identity. Furthermore, Appellant was not prejudiced by its admission as the Trial Court administered several jury instructions regarding the limited use of that evidence. (T.T. 171-172, 256, 288, 326, 446-447).

Trial Court Opinion, 4/20/16, at 10-11. We agree with the trial court's analysis.

It is axiomatic that most relevant evidence is prejudicial. **Commonwealth v. Patterson**, 91 A.3d 55, 76 (Pa. 2014). The test for excluding relevant evidence is whether the evidence is more prejudicial than probative; *i.e.*, the challenged evidence is "so prejudicial that it may inflame the jury to make a decision based upon something other than the legal propositions relevant to the case." **Commonwealth v. Colon**, 846 A.2d 747, 753 (Pa. Super. 2004). Indeed, the fact that the shell casings from the February 28, 2013 shooting of Jackson and Pryer matched the shell casings from the shooting that occurred on March 30, 2013, where Appellant was identified as the shooter, was admissible to establish Appellant's identity. **Reid**, 626 A.2d at 120-121. Additionally, the record reflects that the trial court instructed the jury as to the limited purpose for which the evidence from the March 30, 2013 shooting could be considered. N.T., 6/1/15-6/4/15, at 446-447. After review, we discern no abuse of discretion in the trial court's ruling regarding the evidence from the March 30, 2013 shooting.

Next, Appellant argues that he is entitled to a new trial as his convictions for first-degree murder, aggravated assault, criminal conspiracy, VUFA, and REAP were against the weight of the evidence. Specifically, Appellant avers that Commonwealth witnesses Lane-Bryant and Kurley were not credible. Appellant's Brief at 24. We conclude that no relief is due.

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:
>
>> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Colon-Plaza*, 136 A.3d 521, 529 (Pa. Super. 2016) (citation omitted). An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice. *Commonwealth. v. Gonzalez*, 109 A.3d 711, 723 (Pa. Super. 2015) (citation omitted).

The trial court provided the following analysis on Appellant's challenge to the weight of the evidence:

The fact finder is free to believe all, part, or none of the testimony offered in assessing the credibility of witnesses, and it is outside of the purview of the Superior Court's review to rule on the credibility of witnesses. *Commonwealth v. DeJesus*[,] 860 A.2d 102, 107 (Pa. 2004); [*Commonwealth v.*] *Trippett*, 932 A.2d [188] at 198-199. The Superior Court cannot substitute its judgment for that of the factfinder on issues of credibility. *Commonwealth v. Brown*, 71 A.3d 1009, 1014 (Pa. Super. 2013).

Here, the jury viewed a surveillance video from Red's Bar, and heard testimony from Chanel Pamplin and Jerrick Lane-Bryant, as well as from Appellant's alibi witness. The jury assessed the credibility of all of the witnesses and clearly found the Commonwealth witnesses credible. The combination of direct and circumstantial evidence presented during the trial established Appellant's guilt beyond a reasonable doubt.

Specifically, the evidence established that Appellant followed Pryer, Jackson, and Pamplin out of Red's Bar. Appellant directed Lane-Bryant to drive towards Jackson, Pryer, and Pamplin as they walked on Vincent Street, and then directed him to stop the car. Appellant asked Peebles if he was ready before they exited the vehicle with their firearms, and the two shot multiple times at Pryer, Jackson, and Pamplin. Both Jackson and Pryer suffered multiple gunshot wounds. Jackson suffered a fatal gunshot wound to the heart, and died within minutes. Immediately after the shooting, Appellant and Peebles returned to the car and Appellant told Lane-Bryant to drive away. Appellant twice warned Lane-Bryant not to tell anyone about what happened. One month later, Appellant used the same firearm in a shooting in Sheraden. Appellant fled the state when he learned he was wanted for the Sheraden shooting. While on the run, Appellant told his girlfriend that Peebles would not snitch on him for the shooting of Jackson and Pryer because he and Peebles had both shot at them. (T.T. 44, 52-53, 58-62, 82-83, 87, 104, 111, 113-116, 120, 122, 126, 148-153, 158, 171, 214-216, 234-235, 252-253, 256, 261, 267-274, 276, 320).

The Trial Court properly denied the motion for new trial as the verdict was not against the weight of the evidence. *See* [Trial Court Opinion, 4/20/16, at] 4-9. *See Commonwealth v. Wright*, 865 A.2d 894, 910-911, 915-916 (Pa. Super. 2004) (verdict not against the weight of the evidence where defendant's co-

- 10 -

perpetrator testified at trial regarding the shooting and the types of weapons used); *see also Trippett*, 932 A.2d at 198-199 (it is outside the purview of the Superior Court's review to rule on the credibility of witnesses).

Appellant's claim is without merit.

Trial Court Opinion, 4/20/16, at 12-13.

We discern no error in the trial courts' analysis and conclusion as there was ample evidence supporting Appellant's convictions, and the credibility determinations were solely within the purview of the jury. Appellant characterizes the Commonwealth's witnesses' testimony as incredible[2] and essentially asks this Court to reassess the credibility of the witnesses. However, it is well settled that we cannot substitute our judgment for that of the factfinder. **Commonwealth v. Manley**, 985 A.2d 256, 262 (Pa. Super. 2009). As noted above, the jury was free to believe some, all, or none of the testimony presented at trial, and after review, we conclude that the verdict in this case is not so contrary to the evidence as to shock one's sense of justice. **Gonzalez**, 109 A.3d at 723. Thus, we conclude that the trial court did not abuse its discretion in denying Appellant's motion for a new trial based on the weight of the evidence.

For the reasons set forth above, we find that Appellant is entitled to no relief. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

_____

[2] Appellant's Brief at 27-28.

- 11 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/12/2016