J-S41015-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEFAN J. BROOKS | : | |
| | : | |
| Appellant | : | No. 2440 EDA 2016 |

Appeal from the Judgment of Sentence July 12, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0009545-2015

BEFORE:   GANTMAN, P.J., OLSON, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED JULY 30, 2018**

Appellant Stefan Brooks appeals from the judgment of sentence entered

in the Court of Common Pleas of Philadelphia County on July 12, 2016,

following his convictions of Attempted Murder, Persons not to possess, use,

manufacture, control, sell or transfer firearms, Firearm not to be carried

without a license, Carrying firearms on public streets or public property in

Philadelphia, and Possessing instruments of crime.  We affirm.

The trial court set forth the relevant procedural history and facts herein

as follows:

PROCEDURAL HISTORY

Following [Appellant's] arrest, arraignment and scheduling
conferences, the above-captioned matter was scheduled to begin
as a jury trial with the Honorable Anne Marie B. Coyle, Judge of
the Court of Common Pleas for the First Judicial District Criminal
Division, hereinafter referred to as this [c]ourt as the presiding
jurist. On May 2, 2016, sixty (60) individuals randomly selected

_____
*   Former Justice specially assigned to the Superior Court.

from the city and county of Philadelphia were sent to the courtroom to participate in the jury selection process. Prior to being sent to the courtroom, each prospective juror had completed a preprinted Juror Information Questionnaire Form, which included areas for individual responses to several questions relevant to jury service including biological and race designation.

This [c]ourt conducted a general *voir dire* of the entire prospective group panel during which prospective jurors were provided with more detailed instructions and asked follow up questions designed to highlight possible areas of difficulty with jury service. Subsequently, this [c]ourt conducted an individual *voir dire* of each prospective juror to further determine jury service capability. During the individual *voir dire* process, the Commonwealth of Pennsylvania, by and though its Assistant District Attorney exercised five (5) preemptory strikes and [Appellant], with the assistance of his trial counsel used seven (7) preemptory strikes (N.T. 05/02/2016). From the sixty (60) individuals in the panel, fourteen (14) individuals were selected as fair and impartial jurors to hear and decide questions of fact relating to this case. The final empaneled jury consisted of four (4) African-American individuals, nine (9) white individuals, and one (1) Hispanic - American individual. No objection relating to any form of racial bias was raised at any point during jury selection by either party. (N.T. 05/02/2016). Of the selected jurors, only one person, prospective Juror #56 who became seated Alternate Juror #13, was challenged for cause by the defense based upon an argument that the juror was biased in favor of law enforcement. Alternate Juror #13 did not participate in jury deliberations.

Following jury selection, the trial was conducted over a three day period, beginning on May 2, 2016. Jury deliberations began on May 5, 2016 following closing arguments of both counsel and final instruction from the trial court. No objections were raised on behalf of [Appellant] at any point concerning the prosecutor's closing arguments or the trial court's instructions. The jury returned verdicts of guilty on May 6, 2016 for the following offenses:

Count 1: Criminal Attempt- Murder, 18 § 901 §§A, Felony First Degree;

Count 3: Possession of Firearm by Prohibited Person, 18 § 6105 §§A 1 , Felony Second Degree;

Count 4: Firearm Not to be Carried Without a License, Felony Third Degree, 18 § 6106 §§A 1;

Count 5: Carrying a Firearm in Public in Philadelphia, 18 § 6108, Misdemeanor First Degree; and

Count 6: Possessing an Instrument of Crime with Intent 18 § 907 §§A, Misdemeanor First Degree.

As the presiding trial jurist, this [c]ourt directed the completion of Presentence Evaluations and Mental Health Evaluations by the First Judicial District Probation and Parole Department, and scheduled the sentencing hearing in due course. [Appellant] filed no post-verdict motions. On July 12, 2016, following [a] full and fair sentencing hearing, this [c]ourt entered the subject Order of Sentence. [Appellant] timely filed a Notice of Appeal on July 28, 2016. Following this [c]ourt's direction, [Appellant's] Statement of Matters Complained of on Appeal Pursuant to R.A.P. 1925(b) was filed on September 8, 2016. Included in his appeal, [Appellant], by and through this trial counsel, argued that his convictions for the all offenses should be overturned for the following stated reasons:

1. "[Appellant] was denied his Constitutional right to a fair and impartial jury. During the selection process, several jurors indicated their predisposition toward believing the credibility of a police officer witness based solely on their status as a police officer. Rehabilitation of the witness was inappropriate and the jurors should have been excluded.

2. The Commonwealth use of peremptory challenges was racially biased and violated [Appellant's] Constitutional rights.

3. The Commonwealth presented evidence that was highly prejudicial but offered no probative value in violation of [Appellant's] rights. Specifically, the jury heard a recorded telephone conversation from prison with a vague reference to [Appellant's] situation that should have been excluded.

4. The jury was not properly instructed regarding the credibility of Commonwealth witnesses.

5. The Commonwealth misstated the evidence and testimony of an eyewitness during closing statements."

FACTUAL HISTORY

The underlying offenses stem from the report that on July 10, 2015, [Appellant] shot David Simmons multiple times in front

of Mr. Simmons' home located within the public housing development at 506 West Hillcreek Drive in the Northeast geographical section of the city of Philadelphia. On that date, responding uniformed officers found Mr. Simmons bleeding profusely and suffering from several life-threatening gunshot wounds, including one to his eye. The victim and the eyewitness Jill Kappine, who was the victim's girlfriend, both unequivocally identified the shooter as [Appellant], who was well known to each of them. Mr. Simmons and Ms. Brooks [sic] told investigators that [Appellant] had fled from the scene on foot immediately after the shooting.

Police officers immediately transported the victim to Albert Einstein Hospital Emergency Room. At Einstein, Mr. Simmons underwent six surgeries over the following eight days and was diagnosed with seven total gunshot wounds, four fractures to his right hand, and a fracture to his right eye socket resulting in complete loss of vision in his right eye (N.T. 05/05/2016 pp. 14-16). Mr. Simmons was released from the hospital about two weeks after the shooting, left with one bullet lodged in his chest, two bullets in his stomach, and bullet fragments in his right temple, right eye, and left hip. Id.

On July 10, 2015, Detective Ruddy of the Northeast Detectives conducted an interview with Jill Kappine, Mr. Simmons' girlfriend. During the interview, Ms. Kappine explained that she was sitting outside of her house with Mr. Simmons when [Appellant] walked over to Mr. Simmons. She stated that the two talked for a few minutes, and then she saw [Appellant] take a black gun from his side and shoot Mr. Simmons repeatedly. On July 22, 2015, while Mr. Simmons was still recovering in the hospital, Detective Sullivan of Northeast Detectives interviewed Mr. Simmons. During the interview, Mr. Simmons explained to Detective Sullivan that [Appellant] simply walked up to him on July 10, 2015, started shouting that he had heard a rumor that the victim had plans to harm him and then began firing several times.

Upon completion of a thorough investigation, Detective Sullivan from the Northeast Detective Division obtained an arrest warrant for [Appellant] on July 24, 2015. [Appellant] was later arrested on August 19, 2015[,] on the 4200 block of Roosevelt Boulevard in Philadelphia, Pennsylvania.

Trial Court Opinion, filed 2/13/18, at 1-5.

J-S41015-18

In his brief, Appellant presents the following Statement of the Questions Involved:

1.      Whether it was an abuse of discretion by the trial court to allow the introduction of a recorded telephone conversation that did not contain relevant information pursuant to Pennsylvania Rule of Evidence 401[?][1]

2.      Whether it was an abuse of discretion by the trial court to allow the introduction of a recorded telephone conversation that was highly prejudicial and lacked probative value pursuant to Pennsylvania Rule of Evidence 403[?][2]

3.      Whether the trial court abused its discretion by denying [Appellant's] challenges for cause of several jurors who indicated a predisposition toward believing the credibility of a police officer based solely on their [sic] status as a law enforcement officer[?]

_____

[1] Pa.R.E. 401 entitled "Test for Relevant Evidence" reads as follows:

Evidence is relevant if:

(a)    it has any tendency to make a fact more or less probable than it would be without the evidence; and

(b)    the fact is of consequence in determining the action.

Pa.R.E. 401.

[2] Pa. R.E. 403 entitled " Excluding Relevant Evidence for Prejudice, Confusion, Waste of Time, or Other Reasons" states:

The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Pa.R.E. 403.

- 5 -

Brief for Appellant at 7. As Appellant's first two issues are related, we will

consider them together, and we begin with our standard of review:

> The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion. In determining whether evidence should be admitted, the trial court must weigh the relevant and probative value of the evidence against the prejudicial impact of the evidence. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact.

***Commonwealth v. Antidormi***, 84 A.3d 736, 749 (Pa.Super. 2014) (citation

omitted).

During trial, Appellant argued his recorded conversation with a female

while he was incarcerated was inadmissible as irrelevant and that any

probative value of the recording was outweighed by its prejudicial effect. N.T.

Trial, 5/4/16, at 3-7.[3] The trial court indicated on the record that it had read

the transcript of the call which occurred just after one o'clock on April 1, 2016,

and lasted about three minutes. ***Id***. at 5. The Commonwealth requested to

play for the trial court the portion it wished to present to the jury which

---

[3] The only identifying information pertaining to the female revealed at trial was a phone number. ***Id***. at 13. In his brief, Appellant states the woman was his niece. Brief for Appellant at 12.

commenced at two minutes and fifteen seconds into the recording.[4]  *Id*. at

8.  After doing so, the Commonwealth contended that:

> **The Commonwealth:**  So, Your Honor, my request to play that clip is based on the  fact the Commonwealth believes that it corroborates the motive in this case, what was testified to, in that the complainant and the eyewitness said [Appellant] approached the complainant, accused him. He had heard that the complainant was going to shoot him and the complainant denied that and there were words exchanged, at which point that prompted the defendant to shoot him.
>     So this exchange of a conversation, particularly [Appellant's] comments in the last paragraph that's transcribed

---

[4] The exchange ultimately played for the jury is as follows:

Female speaker:  Like I already told you anything I f------ hear about him I'm gonna let you know.  Like anything I hear I'm gonna tell you about it.  I don't give a f--- who feels some type of way. We feel like his f------ brother is a weirdo oh well but I'm not a weirdo for telling you something somebody told me about you. I'm not a weirdo for that.

[Appellant]:  Yes because, it is and you want me to tell you why?

Female speaker:   How?

[Appellant]:  Because you gotta have full proof of it.   Like you gotta have proof that is what was said.  Like just cause somebody come and say something don't mean it's the proof. Like

Female speaker:  Like but why would Steven lie about that[?]

[Appellant]:  But listen like look at what's going on right now.  I don't even got the proof about what's going on.  But something was told to me and then something happened after that.  And now look where I ended up.  Alright that's, that's a sign right there. Like if I woulda found out what was going on that s--- wouldn'ta happened.

Commonwealth's Exhibit 43.

about, you know, "Something was told to me and something happened after that and now look where I ended up," yes, the Commonwealth is contending that means he ended up arrested and charged and if he would have found out what was going on, then things wouldn't have happened. That goes to, you know, it's his own words. They're recorded on a prison call that he made after the prison recording says that you're being recorded, and it's probative in that it goes to corroborate and show, yes, [Appellant] did hear something. He did act on it and his actions on what he heard was to shoot the complainant.

So that's the basis of my request for that out of ten months of prison calls to admit that about two-minute clip. Actually it's one minute. It's two minutes and fifteen seconds to three minutes and fifteen seconds.

N.T. Trial, 5/4/16, 8-10.

Defense counsel contended the conversation was vague and, therefore, lacked probative value and could prove to be extremely prejudicial. *Id*. at 11. The trial court indicated that it read the excerpt differently and determined that when it is read in context with the entire conversation, the conclusion may be drawn that Appellant regretted failing to delve into the information he had received from someone, which proved to be unfounded, before getting into a confrontation with the victim. *Id*. at 12-13. The trial court reasoned:

If there are other explanations for this conversation, whoever it is that he's talking to, you know, you can proffer a different explanation, but it certainly is probative. In the entire context of this conversation, I read it as somewhat vague given the fact he's on a recorded phone, but it's an acknowledgment that he didn't check the source of the information first and there's regret that because somebody told him something, which may well have not been true what was told to him, this is what happened, and if he had found out the true source of the information this would not have happened. And that may well be. I don't know. I can't retrace time, nor can he.

- 8 -

*Id*. at 13-14.

Defense counsel again posited the recording lacked relevance following which the trial court reminded counsel that he was free to "argue the weight of this conversation" and that "it's not in reference to anything of this case." *Id*. at 15. However, the court remained of the mind that "[the] immediate contextual understanding of this conversation is that man's regret to the girl that he was talking to, because it may well have been that the source of information given to him regarding this victim was not correct and had that been checked or proven, quote, this would not have happened." *Id*. The trial court concluded the conversation was admissible because it deemed the probative value of Appellant's acknowledgement of guilt gleaned from the conversation outweighed any prejudicial inference as to where he "ended up." *Id*. at 15-16.

Defense counsel noted his objection and indicated he took exception to the trial court's ruling. *Id*. at 16. The trial court clarified that Appellant's objection was "well preserved" and that counsel need not renew his objection when the conversation ultimately was played for the jury. *Id*.

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.... [W]e must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record as a whole. Those properly supported facts are binding upon us and we may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Dixon*, 997 A.2d 368, 372 (Pa.Super. 2010) (internal citations and quotations omitted).

In his brief, Appellant maintains for the first time that he was unduly prejudiced because the conversation notified the jury that he had been incarcerated despite the fact that he had gone through "great lengths" to conceal this fact from the jury during trial. He also asserts for the first time that the admission of the recording and transcript "undermined his right to remain silent." Brief for Appellant at 12. However, Appellant did not present either of these arguments as a basis for relief before the trial court.

> [A]ppellate review of an order denying suppression is limited to examination of the precise basis under which suppression initially was sought; no new theories of relief may be considered on appeal. *See Commonwealth v. Malloy*, 579 Pa. 425, 444, 856 A.2d 767, 778 (2004) (concluding an appellant's claim of a Fifth Amendment violation was waived because such claim was not the "particular" theory advanced at the suppression hearing); *see also Commonwealth v. Doyen*, 848 A.2d 1007, 1011 (Pa. Super. 2004) (stating that although the appellant challenged the admission of wiretap evidence in a pre-trial suppression motion, his failure to raise a specific challenge to the authenticity of a particular judge's signature precluded him from raising such a challenge for the first time on appeal), *appeal denied,* 579 Pa. 700, 857 A.2d 677 (2004).

*Commonwealth v. Little*, 903 A.2d 1269, 1272–73 (Pa.Super. 2006).

Because Appellant did not aver that the admission of the recording would be violative of his right to remain silent or undermine his efforts to conceal his incarceration, we cannot consider these theories of relief on appeal. *Id*. at 1272.

To the extent Appellant preserved a challenge to the admission of the recorded phone conversation based upon a theory its probative value was outweighed by its prejudicial effect, following our review of the transcript of the prison call, we find the trial court properly exercised its discretion. A reasonable inference may be drawn from Appellant's final comment that he regretted having failed to verify the source of the information which led to his shooting Mr. Simmons and that this information was relevant to demonstrate Appellant was properly identified as the aggressor with a motive. N.T. Trial, 5/4/16, at 15; Trial Court Opinion, filed 2/13/18, at 12.

As the trial court stressed, Appellant knew his conversation was part of a pre-recorded prison phone call because he made the call on a prison phone while he was in custody, and such calls are preceded by a warning the ensuing discussion would be recorded. Trial Court Opinion, filed 2/13/18, at 12. While it is true that Appellant did not mention the shooting or Mr. Simmons by name, Appellant's argument that his statements were "vague" and "out of context" pertains to the weight to be afforded to the evidence, not its admissibility, and such a determination was properly left for the jury as factfinder. **See Commonwealth. v. Reid**, 533 Pa. 508, 513–14, 626 A.2d 118, 121 (1993).

In his third issue, Appellant contends the trial court abused its discretion in denying his challenge to the empaneling of two jurors, Juror

Number 1 who was employed by the Philadelphia Police Department,[5] and of

Alternate Juror Number 13, who had indicated on the standardized, preprinted

Juror Questionnaire Form her likelihood to believe a police officer based on his

or her status as an officer.   Appellant reasons that:

> The empanelling [sic] of juror #1 and juror #13 was an abuse of discretion by the trial court. Juror #1 was employed by the Philadelphia Police Department. As an employee, he has a close financial relationship with the department. Several witnesses in the case were Philadelphia police officers or detectives. Additionally, juror #1 admitted to a working relationship with the District Attorney's office and knowledge of the prosecutor on the case. This close financial and situational relationship leads to a presumption of a likelihood of prejudice and bias that cannot be rehabilitated. Juror #13 indicated her bias in favor of police in her answers to the questionnaire, specifically her inclination to believe the credibility of a police officer based solely on their status as a law enforcement officer. Her hesitation during the attempted rehabilitation further confirmed her bias. In both instances, the jurors should have been removed for cause based on the existing bias that prevented or substantially impaired their performance as a juror.

Brief for Appellant at 14.

_____

[5] Juror Number 1 indicated that he worked in the crime mapping and analysis unit for the City of Philadelphia Police Department and that his employment would not affect his ability to decide the instant matter fairly.   N.T. Trial, 5/2/16, at 30-32.   Though not dispositive herein, **see infra**, we note the Pennsylvania Supreme Court recently stated that where a case presents an indirect employment relationship between a prospective juror and a party to an action, prejudice is not automatic; rather it is incumbent upon the trial court to engage the juror in questioning to reveal whether he or she believed the relationship would affect his or her ability to be impartial.   An appellate court applies a deferential standard of review in considering the trial court's acceptance of a juror's response to such queries and will reverse the court where there has been a "palpable abuse of discretion."   **Shinal v. Toms**, ____ Pa. _____, 162 A.3d 429, 448 (2017).

Initially, we note that in his Statement of Matters Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b), Appellant referred only to jurors who had indicated a predisposition to find a law enforcement officer credible on the Juror Questionnaire Form. Nowhere did he present in his concise statement Juror Number 1's employment status as a reason for trial court error in his concise statement. "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a); Pa.R.A.P. 1925(b)(4)(vii); **Commonwealth v. Lord**, 553 Pa. 415, 419, 719 A.2d 306, 308 (1998) (concluding failure to raise issue in Rule 1925(b) statement waives issue).

Our review of the record does not reveal Juror Number 1 indicated on the Juror Questionnaire Form that he would find a witness credible based upon his status as a police officer, and he at no time stated such an inclination during *voir dire*. N.T. Trial, 5/2/16, 29-36. Indeed, in its Opinion, the trial court explained that throughout the questioning of sixty prospective jurors, Appellant requested that only one, Alternate Juror 13, be dismissed for cause on the basis of bias in favor of law enforcement. Because Appellant did not argue Juror Number 1 was biased due to his work with the Philadelphia Police Department in his concise statement, he has waived this claim on appeal.[6]

---

[6] In addition, Appellant accepted Juror Number 1 following the trial court's denial of his challenge. *Id*. at 36-37. As such, he has waived this challenge for his failure to raise a timely objection. *See Commonwealth v. McGriff*,

With regard to Alternate Juror 13, the trial court stressed that all prospective jurors received the Juror Questionnaire Form upon their entry into the jury assembly room at which time they had yet to hear from the court. Trial Court Opinion, filed 2/13/18, at 6. The trial court further stated:

> [t]hat juror was prospective Juror #56, who was then seated as Alternate Juror #13, who had earlier marked "yes" to the relevant question indicating preference on the standardized preprinted Juror Questionnaire Form. This preprinted form had been handed to all prospective jurors upon entry into the jury assembly room in the morning to fill out before any instructions were provided by any trial court.
>
> In this case, after being assembled the trial court instructed all prospective jurors that each juror must set aside his or her initial bias and evaluate each witness with the same standard, regardless of what the witness does for a living or their status in life. This [c]ourt specifically addressed the manner in which police officers or any persons who work in law enforcement must be evaluated, without bias for or against them because of the nature of the employment. This [c]ourt followed up the general instructions with general questions posed to all prospective jurors as to whether they could fairly follow the trial court's instructions. Juror No. 13 did not respond to the trial court's inquiry or raise any indication of any bias or demonstrate any inability to fairly follow the trial court's instruction after proper explanation had been provided. Moreover, within the individual *voir dire* conducted of prospective Juror # 13, the following exchange occurred:
>
>> **Q**: Now, you initially checked off yes to the question would you be more likely to believe the testimony of a police officer or somebody in law enforcement just because of his or her job. Okay. Did you hear my instruction that folks in law enforcement and police

_____

160 A.3d 863, 868 (Pa.Super. 2017), *appeal denied*, ____ Pa. _____, 176 A.3d 853 (2017).

- 14 -

> officers included have to be evaluated with the same standard as folks that are not?
>
> **A**: Yes.
>
> **Q**: Can you follow that instruction?
>
> **A**: Yes.
>
> **Q**: Do you have doubt about that?
>
> **A**: No.
>
> (N.T. 05/02/2016 pp. 177-78).

> The trial record demonstrated that prospective Juror #13 had been rehabilitated after the receiving the trial court's general instructions; the individual *voir dire* reflected that she had been dispelled of any possible bias. In his challenge for cause during trial, [Appellant] argued Juror #13 "significantly hesitated" when asked if she could follow the court's instruction. This [c]ourt, however, followed up the first question of "Can you follow that instruction?" by asking if she had any doubt. Juror #13 showed zero hesitation, and this [c]ourt properly denied the challenge for cause. Therefore, the [c]ourt properly used its discretion in denying the challenge for cause and did not err by denying the defense motion to strike for cause. This [c]ourt properly applied its discretion to evaluate [Appellant's] challenge for cause and correctly concluded that the juror dispelled of her bias and could consider the testimony of an officer in the same degree of scrutiny to other witnesses not in law enforcement. Moreover, no prejudice can be claimed because this juror did not participate in final deliberations.

Trial Court Opinion, filed 2/13/18, at 5-7.

Defense counsel initially asked that the prospective juror be stricken for cause due to what he characterized as her "significant hesitancy" when the trial court asked her if she would follow the court's instruction and whether her answer on the Juror Questionnaire Form would interfere with her ability to render a decision and follow the trial court's instruction. N.T. Trial 5/2/16, at 179. While the trial court remarked that the prospective juror "hesitated slightly," it denied the motion "because [it thought] when it followed up to

make sure it wasn't anything more than a hesitation, she said she could be fair." *Id*. Defense counsel did not renew his objection to the prospective juror at this juncture and instead stated, "Okay. She's acceptable." *Id*. For this reason, he has waived the challenge he presents herein for his failure to raise a timely objection. *McGriff*, *supra*.[7]

Judgment of Sentence Affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/30/18

---

[7] Notwithstanding, the record supports the trial court's conclusion and, therefore, we would find the court did not abuse its discretion in denying Appellant's initial challenge for cause pertaining to Juror Number 13.